[Crim. No. 3245.   First Dist., Div. Two.   Mar. 25, 1957.]

THE PEOPLE, Respondent, v. FRANK CARSWELL,
Appellant.

Frank Carswell, in pro. per., and James M. Dennis, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and William M. Bennett, Deputy Attorney General, for Respondent.

THE COURT.—Defendant was found guilty by a jury on an information accusing him together with Andrew White and Robert Hunter of burglarizing the store of Markus Hardware Company at 628 Washington Street in Oakland, and charging him with a prior felony conviction. His motion for a new trial was denied and he appealed from the judgment of conviction and from the order denying his motion for a new trial.

The main witness for the prosecution was Charles E. Holmes who prior to the trial had pleaded guilty to the same burglary. Defendant White changed his plea to guilty early in the trial but did not testify. Holmes, White and Hunter lived at the Magnolia Hotel on 7th Street near Washington Street adjacent to the store of the Marcus Hardware Company. Holmes testified at length to the discussion of the job by all four men in the hotel on Sunday, November 20th, their going down a fire escape to the roof of the store and the entry of all four through a skylight, the taking of guns, the return to White's room in the hotel where the loot was divided among them, and the bringing of part of the guns outside the hotel wrapped in sheets, by Carswell, White and Hunter at or about 8 or 9 o'clock that evening. The department manager of the store testified that when he came to work on the next Monday morning, 27 of the guns on a rack, which he had checked on Saturday evening, were missing. Of these 19 were recovered by the police partly in locations indicated by Holmes. Nine were found in a room rented by defendant on the upper floor of a duplex at 800-11th Street in Oakland.

Appellant's primary grievance is the admission into evidence over objection of the guns found in his room and of testimony regarding their finding, which he contends was the result of an illegal search. ▪ It is conceded that the original entry of the police into 800-11th Street was without a search warrant and that the burden rested on the prosecution to show proper justification (*Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23]; *People* v. *Bock Leung Chew*, 142 Cal.App.2d 400, 402 [298 P.2d 118]). The question presented is whether the trial court could hold under the evidence produced on *voir dire* that the prosecution had sustained said burden. The following occurred:

When Inspector Richardson testified that on November 21st, 1955 he went with one police lieutenant and three other inspectors to the premises at 800-11th Street, that he went upstairs there and observed some guns, counsel objected and

asked that *voir dire* relating to the Cahan rule be allowed. Under questioning by counsel the inspector testified that he entered the premises at 800-11th Street on November 21st, that they did not search it, and that at the time they had no search warrant. The court then directed the prosecution to develop the matter. Under questioning by the district attorney the inspector testified further: "We knocked on the door and were admitted by a man who was painting the premises . . . We found the upstairs portion to be vacant . . . with the exception of one room. The painter opened this door and we were able to observe one of the guns." On questions by the court the inspector stated that he did not see anyone else on the premises at the time, "just the painter," that there was no objection whatsoever on his part to admitting him to the premises and that the door was opened by the painter, after which testimony the objection was overruled. The testimony then continued to the effect that the witness "did not enter and take anything from there at that time." The premises were a two family dwelling, a duplex, the bottom half of which was occupied by the owner and his family. The upper portion was at the time vacant with the exception of this one room. "This one room proved to be Mr. Carswell's room." The following day they obtained a search warrant. (This search warrant was admitted into evidence over objection for the limited purpose of proving that the subsequent entry was legal, and with instruction to the jury that the facts recited in the affidavit attached to it were not proof of the facts stated.) On the 22d the witness and other officers entered Mr. Carswell's room and removed the guns, one gun that was lying across the foot of the bed and eight that were stacked in the closet. They matched the described stolen guns from Markus Hardware and were received into evidence as exhibits. Carswell was not in custody at the time.

■ "It is, of course, settled that if the conduct of the officers in entering or searching was unlawful, the search warrant subsequently obtained based on their observation in the apartment was invalid." (*People* v. *Roberts,* 47 Cal.2d 374, 377 [303 P.2d 721].) It must also be noted that the People do not contend that the entry into the building was made with relation to any arrest or that there was any probable cause for an arrest or search.

■ If the officers, without taking any illegal action, happened to see incriminating evidence in defendant's room, then there is no reason for excluding such evidence. (*People*

v. *Roberts, supra,* 47 Cal.2d 374, 379; *People* v. *Martin,* 45 Cal.2d 755, 761 et seq. [290 P.2d 855]; *People* v. *Chin,* 145 Cal.App.2d 583, 586-587 [303 P.2d 18].) ■ However, if the officers were illegally at the door of the room of defendant in the duplex, even if their presence was not in violation of defendant's own constitutional rights but in violation of those of the landlord, (*People* v. *Martin, supra,* 45 Cal.2d at p. 761) or if they illegally caused the door to be opened for them by a person of whom they had no reason to believe that he had authority to do so (*People* v. *Roberts, supra,* 47 Cal.2d at pp. 376-377) then the knowledge so obtained could not be used as evidence or as the basis to obtain further evidence. The incomplete and vague evidence offered by the prosecution is wholly inconclusive as to which of the above two situations was present. It is not shown for what purpose, if not for a search, the officers went to the address, whether they asked permission to enter or asserted that they had a right to enter (see *People* v. *Kitchens,* 46 Cal.2d 260, 263 [294 P.2d 17]), whether they asked for any person they were interested in or not; whether the painter who opened the door was authorized to permit them to walk through the house and to open the door of defendant's room in their sight, or whether and why they in good faith believe that he was so authorized (*People* v. *Roberts, supra,* 47 Cal.2d at p. 377), what ground they gave to the painter for wishing to enter the house and go to the second floor, (a circumstance on which may depend whether they could in good faith believe that he was authorized to permit them to do so), whether they requested or ordered the painter to open the door of defendant's room or whether he opened it of his own initiative; whether the door to the room was locked and the painter used a key or not. Without knowledge of such further circumstances, which were necessarily known to the witness and available to the prosecution on whom the burden of proof was imposed, there was no basis for any inference as to whether the action of the public officers was lawful or unlawful in relation to the rule of the Cahan case.

■ Respondent contends that, although where it was shown that the officers did not have a search warrant the burden of showing justification for the entry was on the prosecution, after it had offered some evidence (held by us to be wholly inconclusive) the missing evidence should be considered to be in its favor on the basis of the rule quoted

from *People* v. *Farrara,* 46 Cal.2d 265, 269 [294 P.2d 21], that "in the absence of evidence to the contrary it must . . . be presumed that the officers regularly and lawfully performed their duties." We understand both the Badillo case, *supra,* and the Farrara case itself to hold that this presumption has been prima facie rebutted when defendant has shown that the entry was made without a search warrant and that then the burden is on the prosecution to prove justification without the benefit of said presumption. In the Bedillo case it is said (46 Cal.2d at p. 272), "In the absence of evidence to the contrary, it is presumed that the officers acted legally (see *People* v. *Farrara,* p. 265, *ante,* [294 P.2d 21]), and if the issue is raised for the first time on a motion to set aside the information, the motion should be denied unless the evidence before the committing magistrate establishes that essential evidence was illegally obtained. When, however, the question of the legality of an arrest or of a search and seizure is raised either at the preliminary hearing or at the trial, the defendant makes a prima facie case when he establishes that an arrest was made without a warrant or that private premises were entered or a search made without a search warrant, and the burden then rests on the prosecution to show proper justification." In the Farrara case at pages 268, 269, it is stated: "In *Badillo* v. *Superior Court, post,* p. 269 [294 P.2d 23], we held in this respect that 'the defendant makes a prima facie case when he establishes that an arrest was made without a warrant or that private premises were entered or a search made without a search warrant, and the burden then rests on the prosecution to show proper justifications. [Citations.]'

"In the present case, on the contrary, there is no such evidence, and to reverse the judgment it would be necessary to presume that the officers acted illegally and that the trial court erred in admitting the evidence so obtained. It is settled, however, that error will not be presumed on appeal [citations], and in the absence of evidence to the contrary it must also be presumed that the officers regularly and lawfully performed their duties. [Citations.]" Clearly, both cases contrast the presumption in behalf of the officers when there is no evidence at all, with the burden on the prosecution to prove justification when it has been shown that private premises have been entered without a warrant. The rule of the Badillo case would hardly have any meaning, if, as soon as any evidence whatever was introduced by the

prosecution for the purpose of justification, the presumption of lawful conduct of the officers was revived, relieving them from the necessity of making an actual showing of the justifying facts.

Independent from the presumption the respondent has not sustained the burden of justification. It cannot be said that the fact alone that a painter opened the street door when the officers knocked, that he did not object to their entry and that he opened the door of defendant's room in itself, without the presumption, shows a justification of the conduct of the officers because of permission granted by a person authorized to give such permission or whom the officers in good faith and reasonably believed to be authorized. There is no reasonable basis for a general assumption that every person who happens to be in a house has authority to permit police officers to do acts on the premises which they could not legally do without such permission. In *People* v. *Jennings,* 142 Cal.App.2d 160, 168-169 [298 P.2d 56], it was held that the fact that two daughters of defendant, age 15 and 17, admitted the police officers to defendant's home and that the elder one accompanied the officer to the basement, where he found material evidence, did not constitute justification by consent. *People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469] and *People* v. *Caritativo,* 46 Cal.2d 68 [292 P.2d 513] on which respondent relies are not in point. They were distinguished in *People* v. *Roberts, supra,* 47 Cal.2d at p. 377, as follows: "In both of those cases the premises searched were part of a private home, it was unclear whether the defendant was a guest, tenant or servant, and the officers had the consent of the owner who purported to have authority to authorize the search. In the present case Mrs. Higgins was a tenant of an apartment, and there is no evidence that the officers had reason to believe that the manager had authority to consent to their entry. . . . Moreover, although the burden is on the prosecution when it seeks to justify an entry on the ground that the officers reasonably believed in good faith that they had the consent of an authorized person [citations] no attempt was made to establish such a belief. . . ." Neither was any such attempt made in this case. We hold that the admission of the evidence relating to the guns found in the room rented by appellant including the guns themselves was error.

Respondent contends that even if the evidence held to be erroneously received is disregarded there remains sufficient

evidence of appellant's guilt and sufficient corroboration of the testimony of Holmes. Such is not the decisive question on appeal when inadmissible evidence has erroneously been received. ▮▮ "Our function is to determine the correctness of the rulings made on the admission and rejection of evidence and to determine whether rulings adverse to the appellants were erroneous and, if erroneous, operated to the prejudice of appellants' substantial rights." (*People* v. *Zammora*, 66 Cal.App.2d 166, 204 [152 P.2d 180].) In *People* v. *Tarantino*, 45 Cal.2d 590 [290 P.2d 505], illegally obtained recordings had been played to the court and jury. The Supreme Court reversed the conviction on the counts to which the recordings related stating (at pp. 595-596) : "Since the recordings clearly constituted a substantial and important part of the evidence pertinent to the last mentioned counts, it cannot be said that the verdicts as to those counts rested on evidence independent of them. [Citations.] Accordingly their admission in evidence deprived the defendant of a fair trial and resulted in a miscarriage of justice which necessitates a new trial as to such counts." In this case the evidence as to the guns found in appellant's room, although not the only corroborating evidence implicating him, was certainly a substantial and important part of it. ▮▮ If possession of stolen goods soon after a burglary is unexplained or the attempted explanation rejected by the jury, such alone is sufficient corroboration. (*People* v. *Miller*, 54 Cal.App.2d 384, 386 [128 P.2d 785] ; *People* v. *Haughey*, 79 Cal.App. 541, 543 [250 P. 406] ; *People* v. *Rice*, 29 Cal.App.2d 614, 620 [85 P.2d 215].) ▮▮ The further corroborating evidence* was not of such force that the jury could not have come to a different verdict as to appellant if no evidence as to the guns had been introduced. Hence, we cannot say that the error was not prejudicial and the judgment must be reversed.

After this conclusion the other contentions of appellant require at most cursory mention.

The voir dire examination in the presence of the jury and the admission in evidence of the search warrant for the

---

*The witness Melinda Orndoff testified that she saw Carswell, Hunter, and White coming down the stairs of the Magnolia Hotel on November 20th at 7:20 p. m. each carrying a long package wrapped in sheets (the time does not quite harmonize with the testimony of Holmes) and discrepancies were shown between the story told by appellant to the police and the one he testified to at the trial (they related mainly to which of the burglars had a key to his room and could have placed the guns there and to the manner in which appellant said to have handled the guns before they were in his room, explaining possible finger prints).

limited purpose stated has no separate importance because they did not add anything to the evidence before the jury, as the evidence concerning the guns themselves was admitted. We therefore need not decide whether appellant could complain of the presence of the jury, although his counsel took part in the voir dire examination without requesting that the jury be excused and whether the admission of the search warrant could be prejudicial notwithstanding the extensive instruction of its limited purpose and effect given by the court.

Although an instruction that Holmes was an accomplice as a matter of law should have been given, (*People v. Dobkin,* 74 Cal.App.2d 269, 273 [168 P.2d 729]) the error was clearly not prejudicial because the court correctly instructed the jury on the definition of an accomplice, Holmes' testimony did not leave any possible doubt as to his being an accomplice under said definition, and the district attorney in his opening statement expressly explained that Holmes was an accomplice of the defendants and that his testimony required corroboration. (*People v. Barclay,* 40 Cal.2d 146, 152, 153 [252 P.2d 321]).

Appellant complains of an instruction given regarding sufficiency of corroboration of testimony of accomplices which differs in one respect from the accepted instruction CALJIC 830, which states the rule of law as upheld in many cases among which *People v. Hoyt,* 20 Cal.2d 306, 312 [125 P.2d 29]. The CALJIC instruction accordingly directs the jury for purpose of testing the corroboration to exclude from consideration "the testimony of the accomplice(s)" and then to decide whether the remaining evidence tends to connect the defendant with the commission of the offense. The instruction here given directs to eliminate for that purpose "such testimony, if any, of the accomplice or accomplices which tends to connect the defendant in question with commission of the offense charged and shown by the evidence to have been committed by someone." An instruction formulated in a similar manner was upheld in *People v. Keene,* 128 Cal.App.2d 520, 528 [275 P.2d 804]. The result will be the same as that of the CALJIC instruction if the quoted phrase is understood by the jury to mean "which directly or indirectly may tend to connect the defendant with the commission of the offense"; it will, however, lead to a different result if understood to mean "which in itself tends to connect the defendant with the commission of the offense." Suppose one of the men who

have taken part in a burglary testifies that in entering the premises a green rope was used, a fact not otherwise shown. This in itself does not tend to connect any defendant with the burglary. If, however, a green rope is found in the home of a suspect the testimony of his accomplice will indirectly connect him with the offense. Under the CALJIC instruction such evidence cannot be used as corroboration. As under the formulation used in this case it is not quite certain whether such corroboration may be used or not such formulation may be confusing and it seems undesirable to give it because it has no advantage over the simpler CALJIC instruction, which is considered correctly to state the law. Whether the giving of the instruction was prejudicial error need not be decided because the judgment and order appealed from must at any rate be reversed because of the error in admitting the illegally obtained evidence.

Judgment and order reversed.