**UNITED STATES of America,**

v.

**Rudolf Ivanovich ABEL, also known as "Mark" and also known as Martin Collins and Emil R. Goldfus, Defendant.**

Crim. No. 45094.

United States District Court
E. D. New York.

Oct. 11, 1957.

William F. Tompkins, Asst. Atty. Gen., Kevin T. Maroney, James J. Featherstone, Special Attys., Dept. of Justice, Washington, D. C., Anthony R. Palermo, Special Atty., Dept. of Justice, Rochester, N. Y., for the United States.

James B. Donovan and Arnold G. Fraiman, New York City, for defendant.

BYERS, District Judge.

This is a defendant's motion made in this court on October 2, 1957, under Fed. Rules Crim.Proc. rule 41(e), 18 U.S.C.A., for the return and suppression for use as evidence, of any and all property seized on June 21, 1957 in Room 839 of the Hotel Latham (Manhattan) because, as alleged, such property was illegally seized without warrant and contrary to the Fourth and Fifth Amendments to the Constitution.

Hearings were conducted in open court on October 8 and 9, by way of supplementing the original affidavit of the defendant verified September 13, 1957, which was filed as part of a special proceeding in the Southern District. Pursuant to the opinion of Judge Ryan of that court dated October 2, that proceeding was dismissed with leave to the defendant to move in this court.

By affidavit filed October 8, the defendant's chief counsel thus succinctly states the issue:

"*The defendant* maintains that the true objective of the Department of Justice in conducting the search and seizure at the Hotel Latham on June 21, 1957 was to obtain any espionage material possessed by a suspected Soviet agent in Room 839;

"*The Government,* in the affidavits most recently submitted in its behalf, apparently denies this contention."

On June 21, 1957 the defendant was arrested at his room in the said hotel at about 7:30 a. m. by agents of the Immigration and Naturalization Service (which is an integral part of the Department of Justice), pursuant to a warrant of arrest issued by the Department of Justice (Immigration and Naturalization Service) bearing date June 20, 1957; at that time there was served upon him an order to show cause in which it is recited that it appears that he is in the United States in violation of law in that he is not a citizen or national of the United States but is a national of Russia, namely, the Union of Soviet Socialist Republics, and that he entered the United States at an unknown point across the border from Canada, in 1949.

That he failed to notify the Attorney General of his address during January of 1956 and during January of 1957; that he did not furnish notice of his address because he feared that by so doing he would disclose his illegal presence in the United States; that he is subject to being taken into custody and deported pursuant to Section 241(a)5 (8 U.S.C.A. § 1251) of the Immigration and Nationality Act, having failed to furnish notification of his address in compliance with Section 265 of that Act (8 U.S.C.A. § 1305), and had not established that such failure was reasonably excusable or was not wilful. The defendant was named in both the warrant and the order to show cause as Martin Collins alias Emil R. Goldfuss.

All papers used in the Southern District are now before this court on this motion.

At the request of the defendant a hearing was conducted on October 8 and 9 for the purpose of taking the oral testimony of the Government agents whose affidavits had originally been filed in opposition to the motion.

The following witnesses testified:

Robert E. Schoenenberger, a Supervisory Investigator with the Immigration and Naturalization Service, U. S. Department of Justice;

Edward J. Farley, a Supervisory Investigator with the Immigration and Naturalization Service;

Lennox Kanzler, Divisional Investigator with the Immigration and Naturalization Service;

Paul J. Blasco, Special Agent of the F.B.I. assigned to the New York Office;

Mario Noto, Deputy Assistant Commissioner for Special Investigations, United States Immigration and Naturalization Service.

The first three witnesses testified to what took place on the occasion of the arrest of the defendant. It is to be remembered that he had not thus far disclosed his true name; the warrant for arrest and order to show cause having been issued by the Immigration authorities, as stated, were in the possession of Schoenenberger, and he with Edward Farley and Edward Boyle, Immigration Investigators, entered the room of the suspect at about 7:30 a. m., and it was approximately at that hour that the arrest was made.

Special Agents of the F.B.I. Gamber and Blasco, pursuant to agreement with the Immigration officials, had entered Room 839 in that hotel at about 7:00 o'clock, and they interviewed the person who subsequently proved to be this defendant; as Blasco testified, their object was to induce him to cooperate in their efforts to learn something about this individual. Another Special Agent, Phelan, was also present, and all three identified themselves and stated the reason for their presence.

Blasco's testimony is quite explicit as to the questions which they asked after

having explained their special duty involved alleged violations of matters touching the internal security of the United States and that such was the special object of their inquiry.

The man then known as Collins was asked his name, the date of his birth which he first stated to be either June 15 or July 15, 1897, but he did not explain why he first gave one month and then the other; he stated that he had been born in New York City and that he lived at the hotel but did not answer when asked how long he had resided there; the same silence met the question as to where he had lived prior to coming to the hotel. He said that his mother's name was Mertha Collins and that her maiden name was Rollins. He stated that he was not employed and had not been for some time; he failed to state when he had been last employed or to give the name of his father. He stated that he had no brothers or sisters or other relatives in the United States; that he had resided most of his life in New York City.

He was told that the Agents would like to have his cooperation in answering these questions and that if he failed to render such, he would be placed under arrest before leaving his room.

Blasco's testimony is convincing to the effect that this is the only cooperation which the Agents sought; he also stated that during the interview Agent Gamber did address the then supposed Collins as "Colonel," and that he did so because of certain information which had developed in the F.B.I. investigation of the person known as Collins.

In view of the failure of the F.B.I. Agents to elicit the information that they sought, they then signaled to the waiting Immigration officials who entered and placed the defendant under arrest; in connection with that arrest they made a search of his person and his belongings and also of certain articles which during the course of the search he threw into a convenient scrap basket.

Thereafter he was taken to the headquarters of the Immigration Service in New York City. Subsequent developments are not germane to this inquiry.

The foregoing is a summary statement of what took place on June 21, 1957.

Based upon the allegations of the various affidavits and the testimony taken at the hearing, the defendant advances the argument that his motion should be granted because:

(1) The search incidental to his arrest was illegal since a deportation proceeding is not criminal in nature.

(2) If the foregoing is decided against him, that the search should be deemed to be illegal and not made in good faith, for the reason that the Department of Justice used the deportation procedure and the incidental arrest in bad faith; that the ultimate purpose was to secure evidence as the result of a search which could be used in a prosecution for the alleged violation of our espionage laws, although at the time that the arrest and search took place, the Department was not in a legal position to institute a criminal prosecution based upon the alleged violation of the espionage statutes.

As to the first contention, no good reason appears for sustaining the defendant's argument.

■ Deportation obviously is not a civil cause involving only the rights of one individual as against another. Such a proceeding is initiated in the interests of the United States and for the protection of its citizens; while it carries no penal sanction, it does involve arrest and detention, and thus more nearly resembles a public offence than is a cause resting in mere tort or breach of contract. The basis upon which a final order may be duly entered may well be established as the result of a search of the suspected person and his effects, and to argue that the Constitution forbids the Government thus to act in the public interest is to state a proposition to which this court cannot agree.

■ Both sides have stated that there are no decisions directly on this point, nor has the court been able to discover

one, and thus it is a matter of first impression; however I can think of no reason why a search made in connection with such an arrest as this should be regarded as any less valid than one based upon an arrest made in a proposed criminal cause.

■ Turning to the second argument, the evidence is persuasive that the action taken by the officials of the Immigration and Naturalization Service is found to have been in entire good faith. The testimony of Schoenenberger and Noto leaves no doubt that while the first information that came to them concerning the man then known as Collins, who later admitted that his true name is Abel, was furnished by the F.B.I.—which cannot be an unusual happening—the proceedings taken by the Department differed in no respect from what would have been done in the case of an individual concerning whom no such information was known to exist.

The defendant argues that the testimony establishes that the arrest was made under the direction and supervision of the F.B.I., but the evidence is to the contrary, and it is so found.

No good reason has been suggested why these two branches of the Department of Justice should not cooperate, and that is the extent of the showing made on the part of the defendant.

In the original affidavit filed by Mr. Donovan that which amounts to an argument is presented, to the effect that having certain information believed to be true concerning this defendant, the F.B.I. was confronted with the necessity for at once initiating criminal proceedings against him for alleged violation of the espionage laws (in which event a search and seizure would have been appropriate), or by seeking to enlist his services in a counter-espionage effort.

The testimony of Blasco fails to indicate an effort to enlist this defendant in any counter-espionage activity. It is so found.

Even if the defendant's theory were to be accepted that the F.B.I. availed itself of the Immigration and Naturalization branch of the Department of Justice in effecting a prompt arrest, while the former was engaged in pursuing inquiries already under foot concerning this defendant, it is not apparent to this court that there is anything to be criticized in that procedure. The Department of Justice owes its first allegiance to the United States, and it is not perceived that an alien unlawfully in this country has suffered any deprivation of Constitutional rights in respect to the matters brought to light at this hearing.

In reaching a conclusion, the court has carefully studied the case of Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, and other authorities cited by respective counsel.

The decision in In re Ginsburg, a Second Circuit case 147 F.2d 749, 750, points to the necessity for considering this motion solely upon the basis of the facts that are presented. As that opinion states:

"It remains true, however, that each case of this kind is a fact case."

Before the hearing was entered into, certain specified items concerning which the motion was made, were eliminated by consent, and the decision was stipulated to confine itself to those items only which were thereafter deemed to be embraced. The record clarifies this subject.

It is to be realized that the illegal entry into this country as charged, took place over eight years ago, and continued residence here by this defendant merely projected for that period an illicit status; in order to preserve that status, concealment and clandestine coloration touching the matters alleged in the departmental order to show cause, had to be practiced.

The articles that were seized cannot be characterized as other than instrumentalities which were appropriate for employment by the defendant in the preservation of the false position that he had elected to create and continue to occupy.

That is certainly true as to the false birth certificates and it would seem also to be true as to other paraphernalia and papers—three of which the defendant sought to conceal in his sleeve under the very eyes of the arresting officer—as well as certain of the articles he threw into a waste paper basket with the apparent intention of ridding himself of them.

An affidavit verified October 10 by associate defense counsel has been filed this day and read by the court. Its contents do not enhance the arguments for the defense which have been stated above. The right is reserved to the United States to file an affidavit in reply.

The motion is denied as to all articles to which it is addressed. Submit order.