Argued July 5, reversed December 28, 1966

STATE OF OREGON *v.* JAMES ELKINS

422 P. 2d 250

*George A. Haslett, Jr.,* Portland, argued the cause and filed the brief for appellant.

*George M. Joseph,* Assistant District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

HOLMAN, J.

The defendant was indicted for the crime of illegal possession of narcotics. The indictment charged he committed the crime by having in his possession a narcotic drug known as "methadone." He has appealed from a judgment of conviction.

Defendant was sitting with an acquaintance in a

parked car when a police officer asked him to identify himself. The officer upon questioning the defendant decided that defendant was intoxicated and placed him under arrest for being drunk in violation of an ordinance of the City of Portland. His speech was slurred, he was unsteady on his feet, and he admitted he had been drinking. After defendant's arrest the officer searched defendant's person for a weapon and in his shirt pocket found an unlabeled bottle containing three kinds of capsules and pills. The officer seized them and subsequent analysis disclosed some of them to be methadone. The testimony relative to the police officer's knowledge concerning the pills he was seizing which came in during the hearing on a motion to suppress was as follows:

"Q Now, let's get into your personal knowledge that that white pill is methadon. How do you know that?

"A Well, I had the other two pills, which were identical to this one, analyzed.

"Q Did you analyze them yourself?

"A No, I didn't.

"Q Are you a chemist?

"A No, I am not.

"Q Have you had any education in chemistry?

"A No.

"Q Could you tell by just looking at that pill that it is methadon or are you relying on what someone else has told you?

"A I am relying on what someone else has told me."

At the time the pills were introduced in evidence during the trial the officer was asked why he seized the pills and he said:

"Well, my suspicions were more directed toward the white pills than the other ones."

Defendant assigns as error the court's failure to suppress as evidence the methadone pills, claiming they were illegally seized from him. He admits that he was lawfully under arrest and that the search was proper as an incident of this arrest, but contends that the seizure was unlawful. Because of these admissions it is unnecessary for this opinion to explore the usual grounds of controversy relative to the seizure of evidence as an incident of arrest. The probable cause for the arrest, the good faith of the officer in making the arrest, the time of the search in relation to the arrest, the extent of the area searched, and the intensity of the search are problems not involved here.

■ Evidence illegally seized by the police may not be used by the state in a criminal prosecution. *State v. Johnson,* 232 Or 118, 119, 374 P2d 481 (1962); *State v. Chinn,* 231 Or 259, 265, 373 P2d 392 (1962); *Mapp v. Ohio,* 367 US 643, 81 S Ct 1684, 6 L ed2d 1081 (1961).

The Oregon Constitution Art I, § 9 provides:

> "No law shall violate the right of the people *to be secure in their* persons, houses, papers, and *effects, against unreasonable* search, or *seizure*; and *no warrant shall issue but upon probable cause,* supported by oath, or affirmation, and *particularly describing the* place to be searched, and the person or *thing to be seized*." (Emphasis ours.)

■ The Fourth Amendment to the Federal Constitution is of similar effect, and cases construing it are therefore relevant to a construction of the Oregon provision. With limited exceptions this constitutional provision protects an individual's person and abode from search and his effects from seizure by the police, unless a warrant permitting the same is first obtained.

The most notable exception to the requirement of a warrant is a search or seizure made incident to a lawful arrest.[1]

■ The justification for the aforementioned exception is the necessity to secure the safety of the police and the custody of the prisoner, and to prevent the destruction of evidence by gathering the fruits of the crime and the implements thereof. *State v. Chinn,* supra, 267; *Preston v. United States,* 376 US 364, 367, 84 S Ct 881, 11 L ed2d 777 (1964); *United States v. Rabinowitz,* 339 US 56, 72, 70 S Ct 430, 94 L ed 653 (1950) dissenting opinion of Frankfurter, J. It is not altogether clear from the cases whether other evidence of the crime for which the arrest was made should also be included under the second subdivision listed above, but a decision on this problem is unnecessary to the disposition of this case.

■ If, during a lawful search for these purposes, it comes to the officer's attention that a crime, other than that for which the arrest is made, is being committed in his presence by the arrested person's possession of contraband, it is his duty to seize it. Being in a place he had a right to be and doing a thing he had a right to do, the officer is not permitted to turn away when a crime is being committed in his presence. *State v. Chinn,* supra, 274; *State v. Johnson,* supra, 122. In

---

[1] State v. Chinn, supra, 266; State v. Randolph, 222 Or 389, 391, 353 P2d 238 (1960); State v. Hoover, 219 Or 288, 297, 347 P2d 69 (1959); Preston v. United States, 376 US 364, 367, 84 S Ct 881, 11 L ed2d 777 (1964); Draper v. United States, 358 US 307, 310-311, 79 S Ct 329, 3 L ed2d 327 (1959); Brinegar v. United States, 338 US 160, 164, 69 S Ct 1302, 93 L ed 1879 (1949); Agnello v. United States, 269 US 20, 30, 46 S Ct 4, 70 L ed 145, 51 ALR 409 (1925); Carroll v. United States, 267 US 132, 158, 45 S Ct 280, 69 L ed 543, 39 ALR 790 (1925); Weeks v. United States, 232 US 383, 392, 34 S Ct 341, 58 L ed 652 (1914).

*Abel v. United States,* 362 US 217, 238, 80 S Ct 683, 4 L ed2d 668 (1960), the court said as follows:

"* * * When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for."

For application of the same rule where contraband is discovered by officers executing a warrant to search a premise for other articles see *State v. Muetzel,* 121 Or 561, 564, 254 P 1010 (1927).

■ The following question is posed by this case. When an officer has made a lawful arrest and is conducting a lawful search and observes something he does not know to be contraband but of which he is suspicious, may he take it and be sustained in his seizure if his suspicions subsequently prove to be well founded?

■ The right to search for and seize the fruits and implements of a crime as an incident of arrest is based, as is the arrest, upon a reasonable belief in the case of a felony, that such a crime has been committed and that the person arrested committed it. *State v. Krogness,* 238 Or 135, 145, 388 P2d 120 (1964); *State v. Hoover,* supra, 298; *Henry v. United States,* 361 US 98, 102, 80 S Ct 168, 4 L ed2d 134 (1959). It would therefore follow that before the officer had the right to seize the implements of a crime committed in his presence, other than that for which the arrest was made, he must have reasonable grounds to believe that the article he has discovered is contraband and therefore a crime is being committed. Case law dealing exclusively with seizure separate and apart from the closely-related subject of search is extremely diffi-

cult to find. In *Carroll v. United States,* 267 US 132, 45 S Ct 280, 69 L ed 543, 39 ALR 790 (1925), the defendants were convicted of transporting liquor in an automobile in violation of Section 26, Title II of the National Prohibition Act. The court held that the primary purpose of the Section was the seizure and destruction of contraband goods during transportation and that the arrest of the transporters was incidental. Officers who seized property under Section 26 were held to be protected by the then Section 970 of the Revised Statutes which provided that any officer making a seizure, who had reasonable cause to do so, could not be responsible in any way to the claimant of the goods. The court then said:

> "We here find the line of distinction between legal and illegal seizures of liquor in transport in vehicles. It is certainly a reasonable distinction. It gives the owner of an automobile or other vehicle seized under Section 26, in absence of probable cause, a right to have restored to him the automobile, it protects him under the *Weeks* and *Amos* cases from use of the liquor as evidence against him, and it subjects the officer making the seizures to damages. On the other hand, in a case showing probable cause, the Government and its officials are given the opportunity which they should have, to make the investigation necessary to trace *reasonably suspected contraband* goods and to seize them.
>
> "*Such a rule fulfills the guaranty of the Fourth Amendment.* * * *" (Emphasis ours.)

We thus find the court indicating that the guaranty of the Fourth Amendment requires that it be reasonably suspected that the seized property is contraband in a situation in which the arrest was incidental. In

*United States v. Jeffers,* 342 US 48, 51, 72 S Ct 93, 96 L ed 59 (1951) the court said:

> "The Fourth Amendment* prohibits both unreasonable searches and unreasonable seizures, and its protection extends to both 'houses' and 'effects.'
> * * *"

In *State v. Chinn,* supra, 274, this court used the following language relative to the rules applicable to seizure:

> "We hold that the limits of reasonableness placed upon the search, and which we have discussed above, are equally applicable to seizures."

The framers of the Oregon Constitution were particular to make it so appear. They used the disjunctive between the words "search" and "seizure." The Fourth Amendment to the United States Constitution provides "* * * against unreasonable searches *and* seizures * * *", but Art I, § 9 of the Oregon Constitution provides "* * * against unreasonable search, *or* seizure; * * *." (Emphasis in both instances ours.)

Decisions of the Military Courts are not usually used as precedent for courts of law, but a similar factual situation arose in *United States v. Thomas,* 16 USCMA 306, 36 CMR 472. The defendant appeared to be asleep while sitting in a chair with an empty medicine vial in plain sight in his hand. A noncommissioned officer took the bottle from his hand without disturbing him and subsequent analysis of its contents disclosed heroin. There was no question of arrest or search as no arrest or search was made at the time of the seizure. The following pertinent language was

---

* Footnote omitted.

used by the military court in sustaining an objection to its use as evidence:

"'Search and seizure are separate acts. Each must satisfy the constitutional requirement of reasonableness. A search can be legal, yet the resultant seizure of property or papers discovered in the course thereof may be illegal.'

"It is with seizure of the bottle that we are here concerned, and not with any antecedent search. The Government urges that such was reasonable under the circumstances, but we must disagree. Whether a seizure is reasonable depends upon the existence of probable cause for that action. (Citations omitted.) There must be facts and circumstances from which the probability of the item's contraband nature may be inferred—'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v United States, 338 US 160, 175, 93 L ed 1879, 69 S Ct 1302 (1949). There is simply no basis shown on this record for any conclusion by Sergeant Lively that the seized bottle contained narcotics, or that accused was under its influence. Indeed, he did not even testify he suspected such to be the case. Compare Hobson v United States, 226 F2d 890 (CA8th Cir) (1955).

"All that was shown on this record was a sleeping accused holding a medicine bottle in his hand. Such facts, standing alone, import no suspicion of wrongdoing or possession of contraband. They are meaningless as a legal foundation for the bottle's seizure.  *  *  *"@

If the rule were otherwise, an officer who desired to inculpate an arrested person in another crime, could seize everything in such person's immediate possession and control upon the prospect that on further investi-

---

@ For a case holding to the contrary without discussion of the problem see Sheridan v. State, 187 So2d 294 (Ala App 1966).

gation some of it might prove to have been stolen or to be contraband. It would open the door to complete temporary confiscation of all an arrested person's property which was in his immediate possession and control at the time of his arrest for the purpose of a minute examination of it in an effort to connect him with another crime. Such a practice would be as much an exploratory seizure as one made upon an arrest for which no probable cause existed. Intolerable invasions of a person's property rights would be invited by an *ex post facto* authorization of a seizure made on groundless suspicion.

The application of the above rules of law to the facts in the present case leaves only one result. The officer had no information from which it was reasonable to assume that the pills might be contraband. The conclusion to be drawn from the evidence was that the officer was acting on suspicion. It is not enough that the officer suspects in good faith; his suspicion must be reasonable. In the hearing before the judge and out of the presence of the jury on the propriety of the seizure, there was no evidence that the defendant was known to the officer to be an habitual narcotics user; that the officer was familiar with the actions of persons under the influence of narcotics and the defendant's actions were similar; that he was familiar with the appearance of methadone pills and these were similar; that he had been informed by reliable sources that the defendant was in possession of narcotics; nor was there any other type of evidence which is usually used to justify an arrest without a warrant and a resulting seizure. The seizure was unreasonable.

It is urged that where a properly arrested and searched person's privacy has already been legally

violated, no additional harm has been done to him by the seizure. This presupposes that the rights protected are only those of privacy. The right of privacy is undoubtedly one right which is protected. It is a right which has recently been the subject of great emphasis. Historically, there is no doubt but that the founding fathers were also concerned with the violations of property rights which were brought about by indiscriminate seizures through the medium of general warrants and writs of assistance. 2 Watson, *The Constitution of the United States, Its History, Application and Construction*, 1414-1415 (Callaghan & Co. 1910). It was not only the violation of privacy brought about by the general ransacking of homes and places of business that was sought to be prevented, it was also the carrying away of everything upon which hands could be laid for the purpose of leisurely examination in an attempt to find evidence of unlawful conduct. One of the rights protected was "the right * * * to be secure in their * * * effects, against unreasonable * * * seizure * * *." In a famous discourse on search and seizure in *Entick v. Carrington and Three Other King's Messengers*, 19 Howell's State Trials 1029 (1765), Lord Camden said as follows:

> "The great end for which men entered into society was to secure their property. That right is reserved sacred and incommunicable in all instances where it has not been taken away or abridged by some public law for the good of the whole. * * *"

In *Boyd v. United States*, 116 US 616, 630, 6 S Ct 524, 29 L ed 746 (1886) the court said in referring to *Entick v. Carrington*, supra:

> "Can we doubt that when the Fourth and Fifth Amendments to the Constitution of the United

States were penned and adopted, the language of *Lord* Camden was relied on as expressing the true doctrine on the subject of searches and seizures, \* \* \* ,"

It can be argued that property rights of plaintiff were not involved here as plaintiff could have no property interest in contraband. However, if contraband may be legally seized when the officer does not have reasonable grounds to believe it is such, it will lead to many interferences with property when the officer's groundless suspicions are wrong. Nor can we be sure that the prevention of indiscriminate seizures of property upon lawful arrest will have no effect upon rights of privacy. If indiscriminate seizures are allowed upon lawful arrest, it will tend to promote more arrests upon tenuous or fanciful grounds.

The court's holding in *Abel v. United States,* 362 US 217, 80 S Ct 683, 4 L ed2d 668 (1960) is used in an attempt to justify the present seizure. In *Abel,* as in the present case, the property seized was related to a matter other than that for which defendant was arrested. Here the similarity ends. In *Abel* the officers arrested defendant upon a deportation warrant. However, they also had information he had been engaged in espionage and while arresting him they saw him attempt to secrete the subsequently seized article (a paper with a coded message on it) up his sleeve. Therefore, the officers did not act unreasonably in making the seizure. This is a far cry from the present case where absolutely no basis for the officer's suspicion and seizure was shown by the state.

It should not be forgotten that it is the duty of police officers to ferret out crime. It is their business to be suspicious and they are trained in the ways of

the unlawful. Therefore reasonable grounds for a police officer to believe that he may have come upon implements or fruits of a crime other than that for which the arrest was made may be furnished by something that might be of relative insignificance to a layman. However, a balance must be struck between the protection of the public and the rights of the individual. Violation of property rights is generally considered by our society not to be of as great consequence or importance as violation of the person. Therefore, there may be a legitimate basis for contending that a lesser showing satisfies the constitutional criterion of reasonableness when only property rights are involved and rights of privacy have already been violated by lawful arrest. However, we believe the balance between the public and the individual requires some protection for individual property rights by way of at least a minimal factual basis for the officer's suspicion and resultant seizure of property unrelated to the crime for which the arrest is made. The plain wording of the constitutional mandate requires it.

It is suggested in *Charles v. United States,* 278 F2d 386, Note 2 (1960), that all property is legally taken from an arrested person upon his incarceration in jail, therefore no harm can be done by taking it from him a few minutes earlier at the time of arrest. This presupposes that the arrested person will be incarcerated after being booked and that he will not be released on bail. This is an unwarranted assumption. Particularly in the case of an arrest for a misdemeanor. It may well be that after a person has been deprived of the possession of his property upon being incarcerated, he may not thereafter complain if police have his property examined. His property rights have already been legally violated. However that is

not a question we must decide now as this situation had not yet occurred and might never have occurred.

To the constitutionally-protected rights of privacy and property may be added some sort of a nebulous, poorly-defined right to be protected from undignified, forceable violations of the person.[9] In any event, such a right, if it exists, is not in question here.

■ It has also been suggested that the burden to prove an illegal seizure was upon the defendant who filed the motion to suppress. It is urged that defendant did not carry that burden because he failed to show that the police officer did not have reasonable grounds to make the seizure. This court has not previously considered the problem of who has the burden of proof. The better-reasoned authority makes a distinction between those situations where the search or seizure was made pursuant to a warrant and where it was not. The distinction is based upon the reasonable proposition that where a warrant has issued there has been a finding of probable cause by a magistrate which is presumptively correct. Therefore, if the defendant wishes to challenge a search or seizure under a warrant because of want of probable cause, the burden is upon him. If there is no warrant the burden is upon the prosecution to show reasonableness. A discussion of the rule in the federal system is found in an article entitled *"Probable Cause: The Federal Standard,"* 25 Ohio State Law Journal, 502, 527-528 (1964):

> "The Supreme Court has never been squarely confronted with the question of which party has the burden of proof on a motion to suppress for lack of probable cause. Two Supreme Court cases indicate how the Court would hold and how the lower

---

[9] Rochin v. California, 342 US 165, 96 L ed 183, 72 S Ct 205 (1952).

courts have held. In *Brinegar v. United States,*\*
a case involving a search without a warrant, the
Court did not expressly hold that the government
had the burden of proof, but in speaking of differ-
ence in degrees of proof necessary to establish guilt
and probable cause, the Court assumed that the
burden of proving both lies on the government. In
*Jones v. United States,*\* a case involving a search
with a warrant, the Court indicated that the party
challenging the validity of the search should bear
the burden of establishing its invalidity. It is true
that the Court was dealing primarily with a ques-
tion of standing, but there also was a question of
probable cause involved in the case.

"Since a motion to suppress may be based upon
any point which the defendant feels may render
the search unreasonable, the vast majority of the
cases which discuss the burden of proof state the
general rule that the burden of proof is on the
movant. A quick reading of the cases, therefore,
gives the impression that this is the rule on burden
of proof with respect to all motions to suppress.
A close reading of this group of cases in which the
motion to suppress is based upon an alleged lack
of probable cause indicates that this rule does not
apply absolutely.\* Rather, the distinction between
warrantless searches and searches with a warrant
drawn by the two Supreme Court cases cited above
is adopted and applied by the lower federal courts.
The result is that if the attack is on a warrantless
search and is based on an alleged lack of probable
cause, the burden of proof is on the government
to show that there existed grounds for the officers'
good faith belief of probable cause before the
search. If the attack is on a search made with a
warrant and is based on an allegation that the
warrant was issued on something less than prob-
able cause, the burden of proving that allegation
is on the defendant.\* Fairness demands that this
distinction be drawn and that the government bear

---

\* Footnotes not added.

the burden of proof at least in cases of warrantless searches. From a practical standpoint, it would be impossible for a defendant to prove a lack of probable cause in the abstract. The defendant cannot be expected to prove a lack of some item until he knows on what the government bases its claim of its existence."

Justice Traynor of California made the following observation concerning the rule in California in an article entitled *"Mapp v. Ohio At Large in the Fifty States,"* 3, Duke Law Journal, 319, 337 (1962):

"The defendant 'makes a prima facie case when he establishes that an arrest was made without a warrant or that private premises were entered or a search made without a search warrant, and the burden then rests on the prosecution to show proper justification.' * * *"

For cases holding that the burden is upon the prosecution in the absence of a warrant see: *Knox v. State,* 172 So2d 787, 791 (CA Ala 1964); *People v. Rodriguez,* — CA2d —, 51 Cal Rptr 873, 875 (DCA 2 1966); *People v. Carswell,* 149 CA2d 395, 308 P2d 852, 855 (DCA 1 Cal 1957); *People v. Bock Leung Chew,* 142 CA2d 400, 402, 298 P2d 118 (DCA 1 1956); *State v. Scrotsky,* 39 NJ 410, 189 A2d 23 (1963).

The failure of the trial court to suppress the pills as evidence because they were illegally seized was error. The judgment of conviction is reversed and defendant's bail is exonerated.

PERRY, J., dissenting.

I am unable to agree with the majority. The question of probable cause to arrest and search is one question. The question of what may be lawfully seized in a search as incidental to a lawful arrest is another.

It is admitted that a lawful arrest was made. There is no contention that the search in scope was unreasonable. The sole issue is whether or not it was lawful to seize a bottle which was later found to contain contraband.

No contention is made that the defendant was arrested for the illegal possession of narcotics at the time of his arrest for drunkenness, so no question of probable cause to arrest for narcotics in possession is in issue. Therefore, the sole question in issue is whether an officer in making an arrest may take into his possession articles found upon the person arrested and which have no connection with the crime for which the arrest is being made, but which may tend to establish the commission of another crime.

In *Weeks v. United States,* 232 US 383, 392, 34 S Ct 341, 344, 58 L ed 652, 655, the Supreme Court held that the right had always been recognized "to search the person of the accused when legally arrested to discover and seize the fruits or evidence of crime." Subsequently that court reaffirmed the principle that such a search and seizure is not unreasonable. *Carroll v. United States,* 267 US 132, 45 S Ct 280, 69 L ed 543; *United States v. Rabinowitz,* 339 US 56, 70 S Ct 430, 94 L ed 653. And not being an unreasonable search and seizure, which alone is protected by the Fourth Amendment to the Constitution of the United States, the taking into custody of the personal articles in the immediate control of the person arrested is not unlawful. *People v. Watkins,* 19 Ill2d 11, 166 NE2d 433, 438.

"* * * When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized, * * *." *Carroll v. United States,* 267

US 132, 158, supra. See also, *Murby v. United States,* 1st cir, 293 F 849, 852; *United States v. Lassoff,* 147 Fed Supp 944.

The above reasoning forms the basis of the argument of the Supreme Court found in *Abel v. United States,* 362 US 217, 238, 80 S Ct 683, 4 L ed 2d 668, 686:

"When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say he must return it because it was not one of the things it was his business to look for."

The primary purpose to be served by the Fourth Amendment to the Constitution of the United States is to protect the privacy of the individual and his home from unreasonable invasion by the sovereign. Once it appears that the privacy of his person or his home has been lawfully invaded the procedural rule which acts as a prophylactic to prevent unlawful invasions of privacy by denying the use of the property seized as evidence to secure a conviction has no reasonable application.

If the exclusionary rule was used to suppress evidence of other crimes found on a person lawfully arrested and searched, there being but a single search and seizure that invaded privacy, the sole reason that could be assigned would be that the guilty should not be convicted because the officer making the search found an article that "was not one of the things it was his business to look for."

The Bill of Rights was not designed to be a trap for the police, but to protect substantial rights of individuals. However, when the protective shelter is lawfully invaded there is no reason to hide the results of the search.

The very question asked by the majority is answered in the *Abel* case, supra, and so far as even the dissenting justices in that case were concerned this question apparently was answered correctly. Their dissents are based upon the validity of the arrest and the extent of the search.

Abel was arrested by officers of the Immigration and Naturalization Service for being an alien subject to deportation. Prior to the arrest, officers of the Federal Bureau of Investigation had learned from a defected Russian spy that Abel had for several years cooperated with the spy in attempting to commit espionage. The Immigration and Naturalization Service decided that it would arrest Abel as preliminary to his deportation. The F.B.I. was notified of this plan and officers of the F.B.I. accompanied officers of the I.N.S. to Abel's room.

After the I.N.S. officers had placed Abel under arrest, they searched his person and the room. No consent was given by Abel to search. The I.N.S. officers testified that the purpose of the search "was to discover weapons and documentary evidence" of Abel's "alienage." The F.B.I. agents observed this search but took no part in it. During the search, one of the I.N.S. officers noticed Abel slipping some papers into the sleeve of his coat and he seized the papers, one of them being "a piece of graph paper containing a coded message."

The piece of graph paper containing the coded message was introduced in evidence, not for the purpose of establishing his alienage and deporting him, but to establish his conspiracy to commit espionage. This piece of graph paper containing the coded message was one of the subjects of a motion to suppress

duly made in the Federal District Court and the motion was denied. 155 F Supp 8.

The *Abel* case quotes from the proceedings had in the Federal District Court which discloses that it was admitted that a proper arrest was made, but the prisoner's contention "is that although they were permitted to arrest this man in a manner in which they did, they did not have a right to search his premises for material which related to espionage." 362 US 217, 231. The majority of the Supreme Court in speaking upon this subject stated:

> "* * * Once this piece of graph paper came into Schoenenberger's hands, it was not necessary for him to return it, as it was an instrumentality for the commission of espionage. This is so even though Schoenenberger was not only not looking for items connected with espionage but could not properly have been searching for the purpose of finding such items. When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for. See Harris, supra (331 US at 154, 155)." *Abel v. United States,* supra, 362 US 217, 238, 4 L ed 2d 668, 686, 80 S Ct 683.

And as previously stated the justices dissenting do not take issue with this statement or its reasoning.

The *Abel* case does not disclose whether the officer knew the code message would disclose an act of espionage or not. In all probability he was merely suspicious and took the graph paper with its message to an expert for decoding. In any event, the *Abel* case clearly stands for the right to seize any suspicious articles found upon the person of one lawfully arrested, and thereafter such articles may be used as evidence

to convict of a crime different from that for which he was arrested.

Statements to the same effect and result are found in *Charles v. United States,* 9th cir, 278 F2d 386, 388:

"Searches of both the person arrested and the place where the arrest is made derive their legality in the absence of a search warrant from the existence of a lawful arrest. Without probable cause to arrest, subsequent searches either of person or property violate the Fourth Amendment. That a search is incident to a valid arrest saves it from proscription. The apparent reasoning behind this principle is that once a valid arrest is made, the privacy of the accused has for the most part been lawfully destroyed. Further intrusion connected with and justified by the fact of arrest should not be precluded."

In the matter before us, the record of the hearing upon defendant's motion to suppress discloses that the defendant Elkins had upon his person and under his control that which it was unlawful to possess.

This, of course, meets the requirement of *State v. Chinn,* 231 Or 259, 373 P2d 392, since the narcotics were such as would qualify for the statement cited by the majority, that "the things seized must be things which would have been subject to the law's demand upon a proper showing before a magistrate." But the statement should not be enlarged by construing it to mean that the things seized could only have been lawfully seized if the officer making the arrest knew before he made the arrest and search sufficient facts to sign an affidavit before a magistrate disclosing probable cause to issue a search warrant.

It is the lawfulness of the arrest that permits the invasion of privacy, just as does the affidavit of prob-

able cause which permits the lawful issuance of a search warrant.

The entire argument of the majority is addressed to questions which bear upon the lawfulness of an arrest or issuance of a search warrant. This argument has no bearing upon the issue presented since the lawfulness of the arrest and search are admitted.

I would affirm.

GOODWIN, J., dissenting.

While I am prepared to concur in much of the reasoning and with the principles drawn from many of the authorities cited in the majority opinion, I disagree with one key assumption, and with the result which follows from it. The opinion assumes that if the police were allowed to examine the fruits of the search (pill bottle) in this case merely because they suspected that the defendant was carrying narcotic drugs such a decision would open the door to exploratory searches and seizures. I disagree.

Without a warrant, there can be no lawful search and no lawful seizure. To this rule there is one exception: a reasonable search can be made as an incident of a lawful arrest. If the arrest is lawful, a search is also lawful, so long as it is incidental to the arrest. Seizure, as far as property is concerned, is merely the exercise of temporary control over the property found in a search. Such temporary control is a necessary part of the police function. Knives and guns are property, but they are seizable. If the pills in this case are not seizable, the reason must be found in something other than the defendant's property right. The question, then, is one of obvious contraband on the one hand, compared to suspected contraband on the other.

Here, both the arrest and the search were undeniably lawful. Only the scope of the seizure is questioned.

In my judgment, when the police lawfully discover property that raises a question as to its character, they are entitled to take possession long enough to examine the property. It should make no difference whether the examination is for fingerprints, bloodstains, or other clues. Chemical analysis of property lawfully coming to the attention of the police should be encouraged whenever the police have any reason to suspect that the property is contraband. The constitutionally protected interests in privacy and in property were invaded by the arrest and search. After those activities have been declared lawful, no legitimate constitutional purpose remains to be served by denying the police the right to scrutinize whatever property has been discovered.

I think the majority is adding an unwise and unnecessary refinement of the limitations already imposed upon crime-discovery methods. Scrupulous legality in the arrest and strict standards of reasonableness in the scope of the search are all the protection required by the Fourth Amendment. When these protections are properly understood and enforced, citizens have nothing to fear from a rule that would permit the police to check out the suspicious indications of new crime lawfully brought to their attention.

I dissent.