Argued October 22, reversed and remanded for new trial
November 10, 1975

STATE OF OREGON, *Respondent, v.*
JOHN THOMAS MILLER, aka Walter George
Sealy (No. 16-092) (CA 4576), *Appellant.*
542 P2d 141

*J. B. Smith,* Aloha, argued the cause and filed the brief for appellant.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee. Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

Defendant was found guilty of possession of dangerous drugs under a two-count indictment alleging that he possessed meprobamate and butabarbital. This appeal is from the resulting judgment, claiming error in that the trial court overruled his motion to suppress the pills which were the evidence upon which conviction was based.

■■ On November 22, 1974 between 9:30 and 10 p.m. a patrolling police officer in Beaverton received a radio communication saying that a woman had seen two men—apparently burglars—leaving her home in Beaverton and that they ran easterly therefrom. Going toward the address given, at a point about two blocks westerly and a block southerly from the given address, the officer saw two men walk across the street in front of his patrol car and start to walk on a well-used pathway through a field. He drove his police car behind them and stopped. They continued walking in the direction they were going and the officer called to them in a way which he indicated was an invitation to return and answer some questions and which they interpreted to be a command to return. They did return to the police car with the headlights of it upon them and as they did so the defendant placed or had his hand in a right-hand jacket pocket. When

they were close to the police officer, defendant removed his hand from the pocket and the officer noticed it was bandaged and he could see blood on the bandage. He also could see a bulge in the pocket. The officer asked for and received identification from defendant, and he testified that he suspected the bulge indicated presence in the pocket of a weapon so he requested defendant to remove the contents of the pocket. The defendant and his companion testified that the officer told them to empty their pockets on the hood of the police car, which they did. In view of the trial court's findings we accept the police officer's version. Thus, this initial stop, inquiry and search were of the kind permissible under *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968). But, if the initial intrusion discloses no potential instruments of assault, the search is limited to the outer clothing of the suspect. *Sibron v. New York,* 392 US 40, 88 S Ct 1889, 20 L Ed 2d 917 (1968).

The contents of the pocket were four small plastic vials containing pills. After the officer concluded his questioning of defendant and his companion, he apparently concluded they were not the burglary suspects he had been seeking, but he kept the four vials and gave the defendant a receipt for them and let the subjects proceed. He had the contents of the vials analyzed, resulting in this prosecution.

Inquiry by defense counsel on the suppression motion in the trial court was directed toward the reasonableness of the officer's stopping and searching the two subjects. The court's attention was not directed toward the legality of the seizure and the opinion in *State v. Elkins,* infra, either in the trial court or on briefs in this court. The oversight in the trial court is not surprising in view of the fact that the subjects reported to be fleeing the burglary were last seen

running east and the two subjects involved here were walking in the opposite direction several blocks away in an area where pedestrians commonly walked at that time of evening, were not at all out of breath, and showed no other signs of being the subjects the policeman was seeking. However, even more questionable appears to be whether the seizure as distinguished from the search was the kind prohibited by Art I, § 9 of the Oregon Constitution which inveighs "against unreasonable search, or seizure." In *State v. Elkins*, 245 Or 279, 422 P2d 250 (1966), the Oregon Supreme Court emphasized the disjunctive between "search or seizure."

■ In that case a lawful intoxication arrest had been made. An arresting officer, at the scene, searched the defendant and found upon him a vial containing pills which he suspected might be unlawful narcotics. He seized them, had them analyzed and found his suspicions were correct. We see little, if any, difference between the crucial facts of that case and the case at bar. Of course, there was a valid arrest there; here there was only a stop and inquiry for identification, followed by the search and then the seizure. The officer at bar testified that the first pill bottle he saw did not have indication that it was a filled prescription but stated upon it that federal law prohibited dispensing it without a prescription. One of the other three pill bottles had indication upon it that it was a filled prescription. This evidence was all there was to make the police officer suspicious that the pills were contraband. He testified on cross-examination:

"Q  Now when you were handed this first little vial or bottle, you couldn't tell what was in it, could you?

"A  No, I could not.

"Q  You didn't know what it was?

"A  No.

"Q It could have been aspirin?

"A It had a brand name on it.

"Q Imprinted on the bottle?

"A Yes.

"Q Stamped into it?

"A No. Not stamped into it. I believe it was a label attached.

"Q It's not unusual for people to carry aspirin in those little bottles, is it?

"A I have seen it occur."

In *State v. Elkins,* supra, 245 Or at 288, the court said:

"* * * Intolerable invasions of a person's property rights would be invited by an *ex post facto* authorization of a seizure made on groundless suspicion.

"* * * The officer had no information from which it was reasonable to assume that the pills might be contraband. The conclusion to be drawn from the evidence was that the officer was acting on suspicion. It is not enough that the officer suspects in good faith; his suspicion must be reasonable. In the hearing before the judge and out of the presence of the jury on the propriety of the seizure, there was no evidence that the defendant was known to the officer to be an habitual narcotics user; that the officer was familiar with the actions of persons under the influence of narcotics and the defendant's actions were similar; that he was familiar with the appearance of methadone pills and these were similar; that he had been informed by reliable sources that the defendant was in possession of narcotics; nor was there any other type of evidence which is usually used to justify an arrest without a warrant and a resulting seizure. The seizure was unreasonable."[1]

---

[1] By way of comparison, the California Supreme Court in People v. Brisendine, 13 Cal 3d 528, 119 Cal Rptr 315, 531 P2d

All that is said in this quotation is as applicable at bar as it was in *Elkins*. It is obvious that the officer knew he had no reason for arrest. He acted upon suspicion alone. The *Elkins* rule, clearly established in Oregon, is one which we are bound to apply in this appropriate factual situation.

Reversed and remanded for new trial.

1099 (1975), held that where defendant was arrested in a forest camp for a fire ordinance violation a search of his packsack for weapons was justified, but when a pill vial was found therein it was illegal to open it, learn what it contained and then, after it was found to contain contraband, seize it.