UNITED STATES, Appellee

v

GEORGE G. WEBB, Technical Sergeant,
U. S. Marine Corps, Appellant

10 USCMA 422, 27 CMR 496

No. 12,515

Decided May 15, 1959

*Commander James T. Warns*, USN, argued the cause for Appellant, Accused.

*Lieutenant Commander Ward Boston, Jr.*, USN, argued the cause for Appellee, United States. With him on the brief was *Commander Louis L. Milano*, USN.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused stands convicted of one specification alleging the wrongful and dishonorable failure to pay a debt due to the American Embassy Club, Seoul, Korea (Charge I, specification 2), and one charge of dishonorable failure to maintain a sufficient bank balance to pay a $20.00 check drawn by the ac-

cused and issued to the Palace Cafe, Santa Ana, California (Charge I, specification 6), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The sentence includes a bad-conduct discharge (suspended) and six months confinement at hard labor. On this appeal the validity of the conviction is challenged on two grounds.

**423**

First, the accused contends that evidence relating to the charges against him was obtained as a result of an illegal search and seizure. The accused was brought to trial on six charges. At trial, defense counsel objected to the admission of certain evidence relating to specifications 3, 4, and 5 on the ground that the evidence was obtained as a result of unlawful search and seizure, and, alternatively, that the articles seized were merely evidence, not instruments, of the crime charged and were not, therefore, subject to seizure. See Boyd v United States, 116 US 616, 16 S Ct 524, 29 L ed 746; United States v Rhodes, 3 USCMA 73, 11 CMR 73.[1] The objection was overruled by the law officer. On appeal, the ruling was reversed by the board of review. The board of review dismissed specifications 4 and 5 on the ground that the papers belonging to the accused, which were seized by agents of the Criminal Investigations Detachment, were not the fruits or instrumentalities of crime but consisted merely of evidentiary matter not capable of being legally seized.[2]

Neither the objection at the trial, nor the defense brief before the board of review, mentions the two specifications which are still outstanding. Ordinarily, the failure to object to the admission of evidence obtained as a result of search and seizure precludes the accused from asserting on appeal that the search and seizure were illegal. United States v Fisher, 4 USCMA 152, 15 CMR 152. The reason for the rule is that if objection is made at the trial evidence might be presented by the prosecution to show that in fact the search and seizure were legal. See United States v Dupree, 1 USCMA 665, 5 CMR 93. Appellate defense counsel, however, contends that the waiver rule is inapplicable here because there is "ample evidence" of the surrounding circumstances upon which the court can "reach a considered decision," and that it would be a miscarriage of justice to disregard the plain error present in the case. The record of trial does not support these broad assertions.

According to the evidence, there were three separate searches of the personal effects of the accused. The first search was of a brief case taken from the accused's car by a female civilian who appeared at the Criminal Investigations Detachment office to file a complaint of assault and battery against the accused. The second search was of several boxes belonging to the accused which he had left in the garage of the complainant. These were obtained with the consent of the owner of the premises. She told the agents she did not want the articles and she "didn't want anything more to do with" the accused. The boxes were brought back to the Criminal Investigations Detachment office and placed in the evidence locker. The next morning the agents "got permission to search and . . . [they] went through it." Permission was also obtained from the accused's commanding officer to search the accused's effects in his barracks. In the course of "one of . . . [the] searches" the agents found "a letter from the Embassy Club, the Embassy in Korea, for quite a bit of money." They also found "a letter stating that he [the accused had] agreed to pay a certain amount of money."

Considering the care with which defense counsel framed his objection and his express limitation of the objection to the evidence offered in support of specifications 3, 4, and 5, it is difficult to escape the conclusion that defense counsel believed there was no valid ground for exclusion of the evidence now challenged as inadmissible. Had there been an objection, the prosecution could have developed further the factual basis for the authority to make the second and third searches. Under the circumstances, the accused waived his right to object to the search and seizure on the ground of lack of authority. As for the alternate ground that the matter seized was evidentiary,

---

[1] Specification 3 was set aside by the convening authority. Consequently, the evidence relating to it need not be considered.

[2] The board of review also dismissed specification 1 on the ground that the evidence was insufficient to support the findings of guilty.

suffice it to say that the written acknowledgment of the obligation to pay the Embassy Club and the cancelled check were part of the offenses charged, not merely evidence thereof. United States v Marrelli, 4 USCMA 276, 15 CMR 276.

As his second assignment of error, the accused maintains that the debt of $2062.26 due to the American Embassy Club[3] is in fact a disputed claim which cannot be the basis of a charge of dishonorable nonpayment. See Manual for Courts-Martial, United States, 1951, paragraph 213b. The argument is founded upon the following cross-examination testimony by the accused:

"Q. [TC] Sergeant WEBB, are you familiar with Prosecution Exhibit 1, the acknowledgement of your debt. Would you like to see it?

"A. Yes, sir, I would.

"The trial counsel handed Prosecution Exhibit 1 to the witness.

"Q. That is your signature on it, is it not?

"A. Yes, sir, that is correct.

"Q. You've heard in deposition testimony that you signed this voluntarily and of your own free will, is that correct?

"A. That is correct.

"Q. Then you dispute the justness of this debt?

"A. Might I ask . . .

"Q. Answer my question yes or no.

"LO: Just a second. Let's don't argue with the witness, Trial Counsel. I think that you had best rephrase your question.

"Q. Is this a just debt, Sergeant WEBB?

"A. No, it is not.

"Q. Why did you sign that?

"A. I explained to the court and I repeat myself, there was a cash shortage that had been definitely arrived at in the American Embassy Club. I signed it, as I explained to the court before, I repeat myself, I was shook and I thought it was the wise thing to do.

"Q. Didn't you make any complaint at the time you signed this to either one of these witnesses?

"A. I did make a complaint. It was explained. Also, I had made previous complaints as to the manner in which the audit and to the fact that there had not been an audit of the club.

"Q. Were you forced into signing this?

"A. No, sir, I was not.

"Q. Still you went ahead and signed it?

"A. Yes, sir, I did."

The board of review below pointed out the evidence shows that the accused signed the instrument obligating himself to pay $2062.26, after an audit of his accounts as manager of the Embassy Club showed a shortage in that amount. About a year before, the accused paid the Club $1000.00 for a similar shortage in his accounts. Moreover, in accordance with the terms of the instrument, the accused attempted to obtain a monthly allotment form to satisfy the obligation. The attempt failed but the accused made no other efforts to pay the debt and he did not reply to a letter received from the Club "stating the fact that they had not received any payment." In the light of this evidence, there is no "genuine dispute" as to the legality or the amount of the debt. See Manual for Courts-Martial, supra, paragraph 213b.

---

[3] The instrument reads as follows:

"I, George G. Webb, Tech. Sergeant, United States Marine Corps, SN 289525, do hereby acknowledge my debt to the American Embassy Club, Seoul, Korea, and the members thereto, in the amount of $2,062.26, which total amount I agree to pay in the form of minimum monthly allotments of $100, made payable to the American Embassy Club, Seoul, Korea, upon my arrival at my next duty post which as of this date is:
MCAS Air FMF Pac
El Toro
Santa Anna [sic], California
/s/ George G. Webb

George G. Webb

Witnesses:
/s/ Edwin M. Cronk

/s/ Martin F. Stow"

**425**

The decision of the board of review is affirmed.

LATIMER, Judge (concurring in the result):

I concur in the result.

I would concur outright, except that I have serious reservations whether the written acknowledgment of ■ the obligation to pay the ■ Embassy Club was more than merely evidentiary. In light of the clear waiver, however, consideration of this question is unnecessary in the case at bar. Accordingly, I join in affirming the decision of the board of review.

FERGUSON, Judge (dissenting):

I dissent.

Waivers fall into two broad and general categories. The first is negative and arises out of a failure ■ to act when action is required. The second is of the affirmative variety and is invoked whenever it appears that an accused or his counsel has withdrawn an issue from consideration by conduct which is "affirmative, deliberate and evidential of a conscious design." United States v Mundy, 2 USCMA 500, 9 CMR 130. An examination of the reasons underlying each type of waiver will serve to demonstrate that neither may be applied in this case.

Ordinarily, the accused's failure at the trial level to challenge the legality of a search results in an incomplete development of the circumstances of the search. Appellate tribunals, therefore, cannot ascertain from the record of such a trial whether the search was legal or illegal. Since this deficiency in the record is attributable to the accused, he is precluded from claiming prejudice upon appeal. United States v Dupree, 1 USCMA 665, 5 CMR 93.

The second type of waiver is found in situations similar to that presented by United States v Mundy, supra. There, the defense counsel prevailed upon the law officer to refrain from instructing the court-martial upon a lesser included offense clearly raised by the evidence. This Court held that such

action constituted a waiver, declaring, "Necessarily a certain risk attends all tactics at trial level. When carefully considered tactics fail, the defense cannot be permitted to seek, upon appeal, further opportunity to indulge its tactical guesses at a new trial."

There is, in this record of trial, no such void in the evidence as to the circumstances of the search ■ as to preclude an intelligent conclusion on the question of its legality. Neither does the record warrant the inference that, when the defense counsel failed to include specifications 2 and 6 within the scope of his objection, he did so in pursuance of an affirmative, deliberate, and consciously designed tactical plan. The simple fact is he failed to appreciate certain fundamental matters, hereinafter more fully developed.

Thus, since the reasons supporting application of either type of waiver do not exist here, that principle is not at all applicable and should not be made the basis of this Court's action. The only question we are called upon to decide is whether there appears on the face of the record clear error in an important area which we will reach and cure regardless of specific objection.

My reading of the record persuades me that such an error is presented here.

The first evidence of any significance was obtained by military law enforcement agents through the assistance of the "female civilian" referred to by the majority. The nature of her "assistance," however, should be described a little more fully, for when it is examined at all, a new complexion is put on the case. First, she had no right to the accused's automobile. Yet the agents purported to authorize her to drive it upon the military reservation. Second, while she was being questioned, she referred to items belonging to the accused and, at the agent's suggestion, sent her son to bring in a brief case belonging to the accused and stored in the automobile. To say that the brief case was taken from the accused's car by the female and *not* by law enforcement agents is to fly squarely in the face of the facts.

It is not contended that the Government had any right to search the accused's automobile in the absence of specific authorization. This is a wise course. Emite v United States, 15 F 2d 623 (CA 5th Cir) (1926); United States v Hanley, 50 F 2d 465 (SD NY) (1931); Moring v United States, 40 F 2d 267 (CA 5th Cir) (1930), rehear den 41 F 2d 1008 (CA 5th Cir) (1930).

When private citizens obtain evidence illegally and deliver it to Government officials, the propriety of its use by the latter as an aid in the prosecution of the owner of the property seized turns on the complicity of the officials in the original taking. Burdeau v McDowell, 256 US 465, 41 S Ct 574, 65 L ed 1048, 13 ALR 1159. In the instant case, there can be no doubt that the agents prevailed upon the "female" to bring the automobile to them, and to deliver to them the contents thereof. Her act was their act. Their act is to be judged by the same standard as that by which the legality of her conduct is to be gauged, and her conduct was obviously illegal.

Since this illegal seizure was the source of *all* of the evidence obtained in this case, the well-established "fruit of the poison tree" doctrine requires rejection of all evidence stemming from this source. Silverthorne Lumber Co. v United States, 251 US 385, 40 S Ct 182, 64 L ed 319.

While I need not pursue the various items of evidence obtained at the various searches involved here to their proper source, I have no trouble determining that the check forming the basis of specification 6 of the Charge came from the brief case. The agent to whom it was delivered said it came from that source, and upon receipt thereof he initialed it. Neither must I trace my way through the labyrinthine ways of the mind of the board of review. That tribunal held the searches illegal considering only the nature of the items involved. The question is far too fundamental for such distinctions, valid though they may be in ordinary circumstances.

In sum, all of the evidence supporting the findings returned by the court-martial under specifications 2 and 6 resulted from the unlawful invasion of the accused's constitutional rights. Since this is apparent and unimpeachable, these findings should not be permitted to stand.

I would reverse the decision of the board of review.