UNITED STATES, Appellant

v

ROBERT B. WOODRUFF, Airman Third Class,
U. S. Air Force, Appellee

11 USCMA 268, 29 CMR 84

No. 13,458

Decided February 19, 1960

*Major John C. Wiley* argued the cause for Appellant, United States. With him on the brief was *Colonel John F. Hannigan.*

*Captain Prichard E. Gray* argued the cause for Appellee, Accused. With him on the brief was *Lieutenant Colonel James L. Kilgore.*

Opinion of the Court

HOMER FERGUSON, Judge:

Tried by special court-martial,[1] accused was found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and violation of a lawful general regulation, prohibiting the possession of switchblade knives, in violation of Code, supra, Article 92, 10 USC § 892. He was sentenced to bad-conduct discharge, forfeiture of $45.00 per month for six months, and confinement at hard labor for six months. The convening authority reduced the adjudged forfeitures to $40.00 per month for six months but otherwise approved the sentence. The supervisory authority approved the sentence as reduced by the convening authority. The board of review set aside the findings and sentence and dismissed the charges on the ground that certain evidence was obtained from the accused as the result of an illegal search and seizure and in violation of his rights under Code, supra, Article 31, USC § 831. The Acting The Judge Advocate General of the Air Force certified to this Court the following questions:

"a. Was the Board of Review cor-

[1] ACM S-18230.

268

rect in holding that Prosecution Exhibits 1 and 2 were erroneously admitted into evidence on the ground that they were obtained in violation of the accused's rights under Article 31(b), Uniform Code of Military Justice?

"b. Was the Board of Review correct in holding, in the absence of objection, that Prosecution Exhibit 3 was erroneously admitted into evidence on the ground that it was tainted by a prior violation of accused's rights under Article 31(b), Uniform Code of Military Justice?"

On April 3, 1959, an Airman Wood discovered that two cameras (Prosecution Exhibits 1 and 2) were missing from his cubicle in the Air Police barracks. The barracks was located on an Air Base in France. He reported his loss to an enlisted "flight commander," Sergeant Parrish. Parrish, knowing that a number of Air Policemen were leaving the Base to visit Paris, directed a check of the belongings of all such individuals who departed through the Main Gate. He also dispatched a patrol to the local off-post railway depot with orders to examine the effects of any member of the Air Police found awaiting transportation there.

Approximately ten Air Policemen were at the depot. Accused was standing with two other members of the Air Police Squadron. The other two men were holding their luggage in their hands. Another bag was near the group on the floor. Airman Cooke, a member of the patrol, asked the three men to whom the bag on the floor belonged. Accused identified it as his property. All three airmen were asked to come outside the station with their baggage. Thereafter, a search of the bags was conducted, and the missing cameras were found in accused's valise. At the time of the search, the Air Police patrolmen considered all three men to be suspects. However, none were advised of their rights under Code, supra, Article 31. Upon the discovery of the cameras, accused was placed under apprehension and returned to the Base.

On the same evening, accused was advised of his rights under Code, supra, Article 31, by his commanding officer and interrogated concerning the stolen cameras. He stated that he believed one of the cameras to be his own property, or a replica of it, and was unable to account for the presence in the bag of the other camera. The commanding officer then directed that accused's locker be examined. En route to the barracks for that purpose, the accused voluntarily and spontaneously informed a noncommissioned officer accompanying him that he had a switchblade knife (Prosecution Exhibit 3) in his locker. The subsequent search of the locker disclosed the knife.

The defense presented several witnesses in an attempt to establish accused's whereabouts during the period in which the theft allegedly occurred. The accused initially elected to remain silent. However, the prosecution presented two rebuttal witnesses whose testimony tended to establish that the accused was without sufficient funds to visit Paris and that he had been seen leaving the victim's cubicle at the critical time. Thereafter, accused's certified and legally qualified defense counsel announced that accused desired to appear as a witness in his own behalf "due to the evidence recently—that came out, here." Upon being sworn, accused testified he had no idea how the cameras came to be in his bag and he was unaware that regulations forbade the possession of switchblade knives. He asserted he had placed his own camera, a model identical to one of those found therein, in the bag with his other effects. He concluded by indicating that, if Wood's camera was placed in his bag, it was through error.

Upon the foregoing facts, the board of review concluded that the two allegedly stolen cameras were inadmissible in evidence, as accused was not advised of his rights under Code, supra, Article 31, prior to being asked to identify his bag. They also held the subsequent search of his locker to have resulted from the earlier, tainted examination of the bag. Finally, board members indicated a belief on their part that the erroneous admission of the cameras and the switchblade knife was not cured by the

accused's subsequent judicial admission of the possession of those items.

We have frequently held that a suspect may not be required to identify property as his own unless he is first advised of his rights under Code, supra, Article 31. United States v Taylor, 5 USCMA 178, 17 CMR 178; United States v Holmes, 6 USCMA 151, 19 CMR 277; United States v Williams, 10 USCMA 578, 28 CMR 144. Moreover, we have heretofore condemned wholesale searches of large numbers of suspects without probable cause for an examination of their belongings. United States v Brown, 10 USCMA 482, 28 CMR 48. We need not decide, however, whether our opinions required the board of review to determine that the cameras and the knife obtained in the subsequent search were inadmissible, for we are certain that any error thus committed was overcome by the accused's later judicial declarations.

The board of review's belief that our holding in United States v Sessions, 10 USCMA 383, 27 CMR 457, demands that they reject accused's testimony as curative of any earlier errors in the receipt of the items involved is not accurate. In that case, we were confronted with a peculiar situation in which the erroneously received evidence required the accused either to testify or to " 'entrust the correction of the error to the sometimes untender mercies of reviewing authorities.' " United States v Sessions, supra, at page 388; United States v Haimson, 5 USCMA 208, 17 CMR 208. Such is not the case here. Accused at first elected to remain silent. When he was subsequently confronted with the adverse testimony of the rebuttal witnesses, to which no hint of inadmissibility attaches, accused's counsel expressly indicated that, in view of that evidence, accused desired to testify on the merits. Thus, he chose to fight out at the trial level the issue of his possession of the cameras and the knife in the apparent hope of convincing the members of the court-martial that his control over these prosecution exhibits was innocent. His informed action in this respect served to overcome any violation of Code, supra, Article 31, involved in the earlier receipt of the exhibits. United States v Kelly, 7 USCMA 218, 22 CMR 8; United States v Smith, 2 USCMA 440, 9 CMR 70. In short, he may not now be heard to complain that the court-martial considered against him the inferences to be drawn from his own freely given testimony concerning the fruits of the searches.

The certified questions are answered in the negative. The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force for further proceedings consistent with this opinion.

Chief Judge QUINN concurs.

Judge LATIMER concurs in the result.