UNITED STATES, Appellee

v

DARRYL A. THOMAS, Private, U. S. Army, Appellant

16 USCMA 306, 36 CMR 462

No. 19,269

August 12, 1966

*First Lieutenant Kenneth J. Stuart* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk, Lieutenant Colonel Martin S. Drucker, Lieutenant Colonel Jacob Hagopian, Captain Francis R. Jones,* and *Captain Philip L. Robins.*

*Captain Michael E. Phenner* argued the cause for Appellee, United States. With him on the brief were *Colonel Joseph J. Crimmins* and *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general court-martial convened at APO 96207, San Francisco, California, by the Commanding General, 7th Infantry Division, the accused was convicted of attempted escape from custody, breach of arrest, and wrongful possession of narcotics, in violation of Uniform Code of Military Justice, Articles 80, 95, and 134, 10 USC §§ 880, 895, and 934, respectively. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for two years. The convening authority reduced the punishment to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year. The board of review affirmed, and we granted ac-

306

cused's petition for review on the following assigned issue:

"THE LAW OFFICER ERRED IN ADMITTING INTO EVIDENCE THE PRODUCT OF AN ILLEGAL SEARCH AND SEIZURE."

On May 27, 1965, accused was assigned as a runner for the Charge of Quarters. He came on duty at approximately 6:00 p. m., and appeared normal. Later on, the Charge of Quarters, Sergeant Lively, noticed that accused became sleepy and sluggish. His voice changed "to like a person with a cough or sore throat." "[A] couple of times," he appeared to have fallen asleep standing up.

On being relieved from guard duty, Specialist Tarvin found the accused asleep at 2:20 a. m. in a chair in the orderly room. He was holding in his hand a small medicine bottle, containing some white powder. Tarvin was unable to awaken accused and reported the matter to Sergeant Lively.

Lively immediately went to the orderly room, observed the accused asleep, and took the bottle from his hand. Accused had fallen asleep on several occasions earlier in the evening, and, after the bottle was seized, no effort was made to relieve him of his duties prior to the normal time for their relinquishment. Thus, no question of his apprehension or any search in connection therewith is presented. The bottle was small, clear, and resembled a "penicillin bottle." Sergeant Lively declared he believed he "had a right to take it out of his hand."

Subsequent analysis of the bottle's contents, after Lively had turned it in and it had been transmitted to appropriate authorities, revealed the presence of heroin.

There is no evidence that Lively or Tarvin suspected the accused of using or possessing narcotics or had any reason on which to base such a conclusion. Accused had been previously convicted of possession of heroin, but, contrary to the Government's speculation, the record is devoid of any evidence that even this was known to the Charge of Quarters. On the basis of the facts elicited, the law officer admitted the bottle in evidence over objection as follows:

"DC: I would like to object sir, this time I would like for you to call a short sidebar out-of-court hearing.

"LO: Very well.

"LO: What is the reason for your request for sidebar?

"DC: I don't think there has been an accurate foundation laid for this bottle being introduced into evidence. First of all; there is some question in my mind about whether or not it was an illegal seizure of this bottle, witnesses testified they merely saw a bottle in the hands of the accused. I don't see that taking a bottle out of this man's hand is reasonable under these circumstances. It looks to me like the man had his hand, looks like the man had this bottle clipped in his hand like this; that is an invasion of his privacy and actually constitutes a search of his person without his knowledge and without his consent. Under these circumstances this bottle would not be admissible into evidence. Now, one of the witnesses testified that this bottle here had a cap on it that doesn't appear to be the cap it had on it at the time he took it from the man's possession.

"LO: I think the chain of custody is pretty well set out. Remember if I admit this into evidence my ruling goes on the admissibility of the weight, if any, is up to the court to determine and I will so instruct them. I will bring up the matter of illegal search and seisure [sic], however, this did appear to be in the open and it was laying in the accused hand which as I recall the testimony of the witnesses; it was half cupped. And under the circumstances of the accused condition, which is impossible to draw infrence [sic] from, he may have been under the influence of the drug, and certainly the taking of the bottle which constitutes the further use of it would be proper. I am going to overrule your objection on the basis of that and in connection with the matter, the identification of the exhibit I believe the chain of cus-

tody so far has been established, there is no indication of the accused the fact that each witness has traced it from the point, the state of the accused."

Expert testimony concerning the presence of heroin therein was subsequently received.

Accused, testifying in his own defense, denied possession of the bottle or knowledge of its contents. In addition, he declared without subsequent refutation, that he was sleepy on the night in question because he had spent the previous night on guard and had worked all day. He was assigned as a runner on an emergency basis, following the transfer of a soldier regularly scheduled to assume that duty.

In our opinion, the law officer clearly erred in receiving the bottle and its contents in evidence, based ▆▆▆▆▆▆ ▆ on nothing more than the allegation that the accused was found asleep with it in his hand. True it is that there was no search here, for the bottle was plainly exposed to open view. United States v Morse, 9 USCMA 799, 27 CMR 67; United States v Burnside, 15 USCMA 326, 35 CMR 298. But, as was stated in the latter case, at page 332:

"Search and seizure are separate acts. Each must satisfy the constitutional requirement of reasonableness. A search can be legal, yet the resultant seizure of property or papers discovered in the course thereof may be illegal."

It is with the seizure of the bottle that we are here concerned, and not with any antecedent search. ▆▆▆▆▆▆ ▆ The Government urges that such was reasonable under the circumstances, but we must disagree. Whether a seizure is reasonable depends upon the existence of probable cause for that action. United States v Brown, 10 USCMA 482, 28 CMR 48; United States v Battista, 14 USCMA 70, 33 CMR 282; United States v Davenport, 14 USCMA 152, 23 CMR 364; United States v Burnside, supra. There must be facts and circumstances from which the probability of the item's con-

traband nature may be inferred—"the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v United States, 338 US 160, 175, 93 L ed 1879, 69 S Ct 1302 (1949). There is simply no basis shown on this record for any conclusion by Sergeant Lively that the seized bottle contained narcotics, or that accused was under its influence. Indeed, he did not even testify he suspected such to be the case. Compare Hobson v United States, 226 F2d 890 (CA8th Cir) (1955).

All that was shown on this record was a sleeping accused holding a medicine bottle in his hand. Such facts, standing alone, import no suspicion of wrongdoing or possession of contraband. They are meaningless as a legal foundation for the bottle's seizure. If more information was available to indicate the existence of the requisite basis for the sergeant's action, it was the duty of the Government to adduce it. United States v Dollison, 15 USCMA 595, 36 CMR 93; United States v Herberg, 15 USCMA 247, 35 CMR 219; United States v Westmore, 14 USCMA 474, 34 CMR 254. This was not done here, and we can perceive no grounds in this record for the seizure.

As a further string to its bow, the Government contends that Lively acted as a volunteer and his sei- ▆▆▆▆▆▆ ▆ zure, therefore, was in no way binding on the United States. See Burdeau v McDowell, 256 US 465, 65 L ed 1048, 41 S Ct 574 (1921), and United States v Rogan, 8 USCMA 739, 25 CMR 243. Lively, however, was the Charge of Quarters on the night in question and accused's direct military superior. Indeed, the staff judge advocate below characterized his behavior as that of "a noncommissioned officer, clothed with the power to supervise the discipline of the command." Moreover, his position has been defined to be that of "A non-commissioned officer detailed by the company commander for a 24-hour tour of duty, to observe violations of rules and regulations by the personnel of the company." Gaynor, The New Military and Naval Dictionary, page 52 (1951); Dahl and Whelan, The Military Law Dictionary, page

308

34 (1960); The United States Air Force Dictionary, page 110 (1956). A more precise definition of police activity would be hard to find. Undoubtedly, its scope led to Sergeant Lively's testimony that he felt he "had a right to take" the bottle. We, accordingly, reject the Government's contention he was acting as a volunteer.

In sum, then, we find the seizure of the bottle of heroin to have been unreasonable and in violation of the accused's constitutional rights under the Fourth Amendment, as not being based on probable cause. United States v Brown, United States v Davenport, both supra; United States v Garlich, 15 USCMA 362, 35 CMR 334. As it formed the only basis of accused's conviction of wrongful possession of heroin, its receipt in evidence was plainly prejudicial, and the findings of guilty cannot stand.

The findings of guilty of Charge I and its specification are set aside and the Charge is ordered dismissed. The decision of the board of review is reversed, and the record of trial is returned to the Judge Advocate General of the Army. The board may reassess the penalty on the basis of the remaining findings of guilty or order a rehearing thereon.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

This case is being reversed on a ground never raised by the accused. True, in requesting a side-bar conference, defense counsel indicated he had "some question in . . . [his] mind" as to whether the bottle was properly taken from the accused. However, his actual objection at the time the bottle was offered in evidence was that it had "been tampered with by to [sic] many people" and, therefore, a proper "foundation" had not been laid. Since the evidence demonstrated a chain of custody and complete safeguard of the contents of the bottle, the law officer correctly overruled that objection. I would not, therefore, consider the present allegation that the seizure was illegal. United States v Fisher, 4 USCMA 152, 15 CMR 152; United States v Webb, 10 USCMA 422, 27 CMR 496. In any event, this case is substantially on all fours with United States v Woodruff, 11 USCMA 268, 29 CMR 84. There, as here, the accused elected to testify on the merits, and in his testimony he maintained he did not know how the contraband article came into his possession. Discussing the effect of his testimony, Judge Ferguson, writing for the Court, said:

". . . Thus, he chose to fight out at the trial level the issue of his possession of the cameras and the knife in the apparent hope of convincing the members of the court–martial that his control over these prosecution exhibits was innocent. His informed action in this respect served to overcome any violation of Code, supra, Article 31, involved in the earlier receipt of the exhibits. United States v Kelly, 7 USCMA 218, 22 CMR 8; United States v Smith, 2 USCMA 440, 9 CMR 70. In short, he may not now be heard to complain that the court-martial considered against him the inferences to be drawn from his own freely given testimony concerning the fruits of the searches." [Woodruff, supra, page 270.]

I would affirm the decision of the board of review.