UNITED STATES

v.

**Jeffrey A. CORKILL, Seaman Recruit, U. S. Coast Guard.**

**CGCMS 23027.
Docket No. 778.**

U. S. Coast Guard Court of Military Review.

Sentence Adjudged 1 Aug. 1974.

Decided 16 Jan. 1976.

**1119**

Appearances: Military Judge: CAPT Edwin H. Daniels, USCG. Trial Counsel: LT David F. Johnston, USCG. Defense Counsel: LT Robert P. Dick, USCGR. Appellate Defense Counsel: LT Caleb L. Nichols, USCGR. For the United States: LT G. Alex Weller, USCGR.

## OPINION OF THE COURT

ROSENWASSER, Chief Judge:

Seaman Recruit Corkill was a member of the crew of the CGC UNIMAK berthed at

the Coast Guard Reserve Training Center, Yorktown. He owned a 1963 Buick Riviera which he parked at the Yorktown base.

On 29 May 1974 a search of the Buick at the base, authorized in writing by the commanding officer there, resulted in the seizure of 136 tablets of phencyclidine (PCP), a controlled drug, along with 10 tablets of LSD and a minute quantity of marihuana. Corkill was about to be tried by court-martial when, on 9 July 1974, the security officer at the base again requested and obtained permission to search the car. This time the search turned up two ounces of marihuana contained in two plastic bags in the trunk of the car, and a .38 calibre pistol found in the glove box. Also seized were cigarette papers, clips, a pipe, and some pistol ammunition.

A special court-martial with members tried Corkill on five specifications. Despite pleas of not guilty, he was convicted on all counts, for:

1. Wrongful possession of 10 LSD tablets on 29 May
2. Wrongful possession of 2 grams of marihuana, 29 May
3. Wrongful possession of 136 tablets of phencyclidine, 29 May
4. Wrongful possession of 2 ounces of marihuana on 9 July
5. Wrongful possession of a dangerous weapon on 9 July

The offenses were charged as violations of U.S. Coast Guard Regulations under Article 92 UCMJ.

Motions to suppress the evidence seized from the car were unsuccessfully made at the trial. Corkill was sentenced to confinement at hard labor for three months, forfeiture of $212 pay per month for three months, and a bad conduct discharge. The convening authority reduced the confinement to 54 days but otherwise approved the sentence. On 11 March 1975 the district commander approved.

Before us, appellant contends that both searches were unlawful because not authorized on probable cause. We find that both searches were properly authorized and lawful.

The Constitution, Fourth Amendment, forbids "unreasonable searches and seizures" and declares that "no warrants shall issue, but upon probable cause."

■ The primary constitutional rule in search law today holds that

searches conducted outside the judicial process without prior approval by judge or magistrate are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Evaluation of the constitutionality of a search may begin with the proposition that the informed and deliberate determination of a magistrate (in the military, of a commanding officer) is to be preferred to action by a law enforcement officer on his own. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Accordingly the odds are in favor of a search turning out to be lawful if, in the civil community, it was authorized by a magistrate; or, in the military community, by a commanding officer.

■ The first step in the direction of a lawful search was taken when, in both of the present instances, the commanding officer's authorization was obtained. But it was only the first step. The legality of a search authorized by a commanding officer, like that of a search based on a warrant issued by a magistrate, depends upon the existence of probable cause. *United States v. Tuchman*, 39 C.M.R. 873 (C.G.B.R.1968); CG Law Bulletin 326, April 1963; *United States v. Ness*, 13 U.S.C.M.A. 18, 32 C.M.R. 18 (1962). The Court of Military Appeals has said:

While he issues no warrants, the commanding officer is bound by the same rules in authorizing a search, as his opposite number; that is, probable cause to believe that the things to be seized are on or within the premises to be searched. *United States v. Hartsook*, 15 U.S.C.M.A. 291, 294, 35 C.M.R. 263 (1965).

When application is made to him for permission to conduct a search, the commanding officer necessarily makes a subjective decision. He must "judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause." *Aguilar v. Texas*, supra. Those facts, however, must give rise to something more than mere suspicion. See: *United States v. Lidle*, 21 U.S.C.M.A. 455, 45 C.M.R. 229 (1972); *United States v. Elwood*, 19 U.S.C.M.A. 376, 41 C.M.R. 376 (1970); *United States v. Penman*, 16 U.S.C.M.A. 67, 36 C.M.R. 223 (1966). "A search grounded upon mere suspicion is illegal and the fruits thereof inadmissible." *United States v. Clifford*, 19 U.S.C.M.A. 391, 41 C.M.R. 391 (1970).

In determining whether probable cause exists, the commanding officer should take into account "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *United States v. Thomas*, 16 U.S.C.M.A. 306, 308, 36 C.M.R. 462 (1966). The facts and circumstances which will support a finding of probable cause must be such as "would lead a prudent person to conclude that contraband or evidence of a crime is in possession of the individual, or is on the premises, to be searched." *United States v. McFarland*, 19 U.S.C.M.A. 356, 359, 41 C.M.R. 356 (1970).

■ We turn now to the facts of the case before us to see whether the commanding officer's determination on 29 May 1974 that he had probable cause to authorize a search of Corkill's car was legally sustainable. On that date he was advised by the base security officer, Chief Thomas, that a confidential informant had told the Chief that "there was LSD and PCP and marihuana" in Corkill's car; that these drugs would probably be in the trunk space or the glove box; and that the car was parked aboard the station. Further, that the informer had helped the command in the past in three separate cases, and had also worked with Virginia state authorities to whom he had furnished leads in at least two convictions. Chief Thomas further related that he had in-

structed his informant to go to the UNIMAK and talk with Corkill; and that, returning later, the informant was "very enthusiastic" and reported that he had told Corkill he wanted to buy some "stuff", and that Corkill replied: "I can't get it to you now; I've got to stay aboard the boat, I've got the duty . . . I'll get it to you later, it's in the car."

We have no hesitancy in concluding that the commanding officer acted justifiably in deciding that probable cause was shown. In *Aguilar*, supra, one of the reasons that the Supreme Court found that probable cause was not shown, was because the affidavit told no more about the unnamed informer than the bare conclusions that he was "a credible person" and that he gave "reliable information." In *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) where the affidavit said that "a confidential and reliable informant" had given the information to the agents, it was likewise not enough. Here Chief Thomas furnished the commanding officer with some facts so that he could draw his own conclusion that the informer was reliable. Moreover, the report of the conversation between the informer and Corkill gave some indication to the commanding officer that the accuracy of the informant's information had been verified.

■ It is immaterial that the informer may have lied to Chief Thomas in his report of the conversation. (The accused took the stand and testified that one Butch Langner, a civilian acquaintance living in Williamsburg, had visited him aboard the UNIMAK at the time in question; that Langner "asked me if I wanted to go in on a pound with him", but there was no talk of his wanting to purchase any drugs from Corkill.) It is immaterial which version of the conversation—the accused's or the informer's—was true. The only thing that is material is the information given to the commanding officer on the basis of which he had to decide whether the security officer had demonstrated probable cause to search. The security officer reported the conversation in good faith. Neither he nor the

commanding officer had any reason to suspect that it was a fabrication. Based on the totality of the information imparted to him, the commanding officer made a reasonable, and therefore a lawful, determination of probable cause. *United States v. McFarland*, supra; *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

■ Appellant also raised the question of the correctness of the judge's refusal to compel the government to disclose the identity of the informant. Disclosure was not necessary to the accused's defense nor essential to a fair determination of the issue of guilt or innocence. Accordingly there was no abuse of discretion in the denial of the accused's motion to compel disclosure. Para. 151 *b*(1) MCM 1969; *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *United States v. Miller*, 43 C.M.R. 671 (A.C.M.R.1971).

■ We view now the circumstances of the second search, which occurred six weeks after the first, and did not involve an informant. It was authorized orally by the commanding officer at 6:55 p. m. on 9 July 1974 at the request of the same security officer.

It appears that, in the forenoon of 9 July, Chief Thomas observed Corkill's Buick parked in a prohibited spot at the base. He went over to it; the windows were rolled down and he peered in. In a small area in the back rear passenger side of the car, on the floor, he saw three or four expended matches and what in his opinion were marihuana seeds. He left, but before he could take any action, the car had departed.

He next observed the car at about 6:45 p. m. that day, parked at the end of a line of cars outside the Enlisted Men's club. He posted a man to guard the car, at which time he put his head and arm through the open window and pointed out the matches and seeds, still in the same place. After posting a second guard, he left to telephone the commanding officer, to whom he read a proposed written authorization to search the car for marihuana. He requested permission to search, and Captain High, the commanding officer, granted it. The search was carried out immediately thereafter in the presence of the accused and his father (who had come to Yorktown for his son's impending court-martial). Among the items seized were two plastic bags, containing two ounces of marihuana, found in the trunk, and a pistol found in the glove box. These items became the subject of the last two specifications preferred against the accused.

On the basis of the totality of information possessed by Captain High—what Chief Thomas told him and what he knew himself concerning Corkill—he quickly decided to authorize the search.

Taking into account "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" (*United States v. Thomas, supra*), we view the decision to authorize the search as a reasonable and lawful one. The basic law applicable to the question of the validity of a commanding officer's decision to grant permission to search in an area over which he has control is found in the standard of reasonableness declared in the Fourth Amendment, and not in any rigid academic formula. The determination of probable cause here made was, fundamentally, reasonable and prudent.

■ We do not find merit in the additional contention that an unlawful search took place when Chief Thomas leaned through the open window of the car and pointed out the seeds and matches. The security officer was in a place where he had a right to be, and engaged in the performance of duty, when he first saw the seeds in plain view. The discovery was not the result of an unlawful search. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

■ Also claimed as error was the pretrial denial of the accused's request for a named individual defense counsel stationed outside the district where the court-martial was convened. The requested counsel was on the legal staff of the Commander, Third Coast Guard District. The latter declared

the requested counsel unavailable, stating reasons. No appeal was taken from this ruling. The failure to appeal forecloses the claim of error in this court.

The findings of guilty and the sentence as approved on review below are affirmed.

MAGUIRE, YOUNG, BRIDGMAN, Jr., and LYNCH, Appellate Military Judges, concur.