**UNITED STATES**

v.

**Billy W. ROLLINS, 461 11 0385, Lance Corporal (E–3), U. S. Marine Corps.**

**NCM 77 0255.**

U. S. Navy Court of Military Review.

29 April 1977.

682

CAPT. Eugene A. Ritti, USMCR, Appellate Defense Counsel.

CAPT. Mark M. Humble, USMCR, Appellate Government Counsel.

Before MURRAY, Senior Judge, and MALLERY and GREGORY, JJ.

MURRAY, Senior Judge:

Tried to a special court-martial by judge alone, the appellant was convicted, *in accordance* with his pleas, of willful disobedience of a lawful order; of dereliction of duty; of wrongful possession of marijuana; of wrongful transfer of marijuana, and of larceny, in violation of Articles 91, 92, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 891, 892, 921. On an Additional Charge, the appellant was also convicted, *contrary* to his pleas, of wrongful possession and transfer of marijuana, in violation of Article 92, UCMJ. The sentence, as ultimately approved on review below, extended to a bad conduct discharge, confinement at hard labor for 90 days, forfeiture of $240.00 pay per month for five months, and reduction to pay grade E–1.

The appellant attacks his conviction for the wrongful possession and transfer of marijuana (the Additional Charge laid under Article 92, UCMJ) through the following assignment of error:

THE [TRIAL] JUDGE ERRED BY NOT RULING AS UNLAWFUL THE 16 MARCH APPREHENSION AND BY FAILING TO RULE AS INADMISSIBLE: 1) THE 1,028 MARIJUANA GRAMS DISCOVERED DURING THE SEARCH INCIDENT TO THAT APPREHENSION: and 2) THE TESTIMONY OF PROSECUTION WITNESS [PRIVATE] CARR.

A detailed review of the factual circumstances surrounding this Additional Charge, to which the appellant entered a not guilty plea, is essential to an understanding of the issues raised by appellant through the finely articulated brief of appellate defense counsel, and replied to by an equally expressive brief of appellate Government counsel. We note that while there are some areas of the record that are less than totally precise as to the circumstances circumscribing the bifurcated issue assigned for our consideration, we postulate our factual im-

pressions on a scenario reasonably favorable to the appellant.

On 16 March 1976, a Sergeant Charles Cornett claiming he "had reason to believe that there was marijuana in the barracks and that [the appellant] was in possession of it" went to the appellant's barracks "hoping to catch him." [R. 71].[1] Sergeant Cornett saw the appellant hand a "grocery bag" (an ordinary brown, paper bag) to another individual in the barracks (who was never identified), and then both the appellant and the other person left the appellant's barracks. Sometime during this egress from the barracks, the grocery bag was handed back to the appellant, who then proceeded to a parked automobile.

In the meanwhile, Sergeant Cornett contends that a smaller bag (of some sort), which he thought contained some "remains of marijuana," had been found in the barracks so he contacted a Gunnery Sergeant Tommy Allen, the Acting First Sergeant, and alerted him to his "suspicions" concerning the appellant.[2] Looking out of the barracks window, Sergeants Cornett and Allen saw the appellant proceeding "up the sidewalk" with a Private Carr; the appellant was carrying the brown grocery bag at this time. At this point, Gunnery Sergeant Allen (who first called the military police) hurriedly exited the barracks ostensibly in pursuit of the appellant whom he had lost sight of but who had been walking with Private Carr.

Gunnery Sergeant Allen testified that he had casually observed the appellant in the barracks on 16 March 1976—on a stairwell—and at that time appellant was holding a brown, paper bag (circa 1745 hours). Sergeant Allen then related how he observed the appellant (shortly thereafter) walking along the sidewalk with Private Carr (whom Sergeant Allen did not know by name) and how he called the military police for assistance in "cutting" [the appellant] off because Sergeant Allen "suspected" that the appellant had "an illegal substance."[3] He then ran out of the barracks in order to keep the appellant and Private Carr under surveillance and to "pursue them."

Between the time that Sergeant Allen lost sight of the appellant, made his phone call, and ran out of the barracks to relocate him, the brown, paper (grocery) bag had been handed to Private Carr. There is nothing in the record to indicate that the appellant or Private Carr were aware that they were under observation by Sergeants Cornett and Allen, or that the appellant was being pursued by Sergeant Allen.

Private Carr testified that he saw the appellant on 16 March 1976 "about 4:30 or 5 o'clock" who asked him (Carr) for a ride home. While walking towards the front gate, the appellant saw a friend at the tennis court and, saying he had to get something from that friend's car, he (the appellant) asked the witness, Private Carr, to hold the grocery bag appellant was carrying while he (appellant) ran over to the tennis court to intercept his friend who appeared to be leaving.

Private Carr, after a brief objection to holding the bag, then took the bag to hold it for the appellant.[4] Private Carr started walking with the bag and, shortly thereafter, was stopped by the military police who, without any warnings of any sort, asked Private Carr "what was in the bag" to which Carr replied "I don't know." At this time Gunnery Sergeant Allen ran up and, pointing to the appellant who was in a car

---

1. The record does not contain the "reason" Sergeant Cornett had, if any, for "believing the appellant was in possession of marijuana" on the date in question.

2. The record does not support a reasonable basis for Sergeant Cornett's suspicions. It further fails to articulate what, if any, expertise the Sergeant enjoys in the identification of marijuana.

3. The record does not support any reasonable grounds for the alleged suspicions of either Sergeant Cornett or Gunnery Sergeant Allen that appellant may have had an "illegal substance."

4. At this point Private Carr became a gratuitous bailee of the appellant's private property, the grocery bag.

parked across the field, said, "you've got the wrong one (indicating Carr), that's not the one we want." The military police then began to close in on the appellant who, realizing for the first time that he was being pursued, tried to run away. The appellant was not successful and was caught by the military police.

In the interim, Gunnery Sergeant Allen detained Private Carr after relieving him of his identification card. The bag that Carr carried was not examined at that time, but Carr was required by Sergeant Allen to "set the bag down." The appellant was brought over to Sergeant Allen by a military policeman [5] who "shook both men down" and then "picked up" the bag and "as part of the search . . . opened it up." [6] Observing what he believed to be marijuana in the ordinary brown grocery bag, the military policeman made another search of Private Carr and found what he believed to be marijuana and hashish in his pockets. He then advised both the appellant and Private Carr that they were under apprehension for possession of marijuana.

On 8 June 1976, criminal investigators questioned the appellant, inter alia, about the 16 March episode. The agent testified that during the course of the interview, appellant claimed to have lost several hundred dollars in "front money." The agent asked: "is this what happened in the case with CARR with the 33 bags?" Appellant allegedly replied: "Yes, that one too." Over defense objection based upon "voluntariness," the statement was admitted into evidence against the appellant.

In view of the foregoing factual circumstances, the appellant challenges the admission into evidence of the contraband depicted in Prosecution Exhibit No. 3 and of his statement made to the criminal investigators on 8 June. The appellant postulates his objections on the contentions that the

Government had no probable cause to apprehend appellant, that the contents of the grocery bag after being seized and search were unlawfully introduced at trial since they were the tainted fruit of an illegal apprehension, that the testimony of Private Carr was inadmissible since it too was tainted, that the introduction of the marijuana and Private Carr's testimony was not harmless beyond a reasonable doubt, that the subsequent admission of appellant lacks corroboration and hence cannot sustain the conviction, and that these errors were not waived by failure to specifically object at trial to the unlawful apprehension or to the introduction of the evidence, Prosecution Exhibit No. 3.[7]

The Government counters appellant's assertions and initially contends that the appellant has no standing to raise the apprehension, search, and seizure issues at this point since he failed to litigate them at trial. Thus, the Government asserts that the appellant has "waived" the issues and he has lost his right to raise them before the appellate courts, citing United States v. Walters, 22 U.S.C.M.A. 516, 48 C.M.R. 1 (1973); United States v. Cross, 14 U.S.C.M.A. 660, 34 C.M.R. 440 (1964); United States v. Dupree, 1 U.S.C.M.A. 665, 5 C.M.R. 93 (1952). We do not agree.

That there is a clear issue of unlawful search and seizure present in this case is without question. For some reason, however, trial defense counsel did not see it and, instead, pursued some obscure theory of defense that impliedly suggested that the "brown grocery bag" in question really belonged to Private Carr and the appellant was not shown by the evidence to have any knowledge of its contents. The theory was rejected by the trial judge for obvious reasons, and the useless assault on the damning facts which the defense counsel attempted in cross-examining Private Carr [R. 54–65; 67–68] was compounded by the

---

5. A Corporal Wilkerson.

6. The bag and its contents of 1028 grams of marijuana were admitted into evidence as prosecution exhibit ¶ 3, (surprisingly) without objection by the defense [R. 90].

7. The appellant implies that the trial judge should have recognized the real issue in this case, and—notwithstanding a lack of objection by the defense—should have sua sponte excluded the damaging evidence from the trial.

obfuscated argument of that counsel on the merits [R. 128–130].

In citing the *Dupree* case, *supra,* the Government points out that even if there were "extreme circumstances" under which it would be necessary for the appellate court to consider an issue of unlawful search, regardless of whether it was properly raised below, the pertinent evidence respecting the issue has not been disclosed in the record of trial, and thus our Court cannot make a determination of the issue at this time. Thus, even if we were to not view the defense's failure to object to the search and seizure at trial as a waiver, there is not enough evidence of record, according to the Government, to permit our Court to conduct a reasonable review of the issue on the record. Once again we do not agree, for the record, although lacking in some respect, is sufficient on its face to provide an adequate and reasonable basis for our examination of and disposition of the search and seizure issue.

■ Accordingly, we do so at this juncture in connection with our determination that the appellant was badly advised as to the theory of the defense in this case and its pursuit at trial. It is patently evident that the unlawful apprehension of appellant and his bailee, Private Carr, and the accompanying search and the seizure of the evidence were in issue in this case and whatever other "theory" the defense counsel at trial wished to inject would be ancillary to the more obvious issues. Thus, we determine that the issues were not waived on the trial level notwithstanding the failure of apparently inexperienced counsel to raise them, and we examine *de novo. See United States v. Baxter,* 54 C.M.R. 948, 2 M.J. 610 (N.C.M.R.1977), for a detailed discussion of the waiver rule.

■ Article 7(b), Uniform Code of Military Justice, 10 U.S.C. § 807(b), states: Any person authorized under regulations governing the armed forces to apprehend persons subject to this chapter or to trial thereunder may do so upon reasonable belief that an offense has been committed and that the person apprehended committed it.

It is important to note that the requirement for probable cause is identical for both searches and apprehension. *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). Mere suspicion and/or intuition that a crime is being committed by an individual are not sufficient grounds upon which to base an apprehension. *United States v. Myers,* 20 U.S.C.M.A. 269, 43 C.M.R. 109 (1971). *Cf. United States v. Dollison,* 15 U.S.C.M.A. 595, 36 C.M.R. 93 (1966). *See also Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Nor may an apprehension or search be validated by what contraband, if any, it uncovers. *Byars v. United States,* 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927); *United States v. Weshenfelder,* 20 U.S.C.M.A. 416, 43 C.M.R. 256 (1971). *Cf. Bumper v. North Carolina,* 391 U.S. 543, n.10, 88 S.Ct. 1788, n.10, 20 L.Ed.2d 797 (1968). In addition, flight by an individual does not justify an inference of guilt sufficient to generate probable cause to apprehend. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ An application of these principles to the case at bar leads to the conclusion that appellant's apprehension was not based upon probable cause and was, therefore, unlawful. The record does not support Sergeant Cornett's conclusion that marijuana was in the barracks. Most importantly, even if that conclusion were supported, no evidence was presented which supported— pursuant to probable cause standards—a conclusion by him or Gunnery Sergeant Allen that appellant possessed marijuana in the grocery bag. Furthermore, appellant was lawfully in a place he was entitled to be and was quietly going about his own business. In short, appellant's actions in the barracks were not characteristic of actions upon which probable cause to apprehend must be based. *Compare United States v. Myers, supra, United States v. Kelly,* 47 C.M.R. 734 (A.C.M.R.1973), and *United States v. Karo,* 46 C.M.R. 633 (A.C.M.R.1973), *with United States v. Melson,* 17 U.S.C.M.A. 620, 38 C.M.R. 418 (1968),

*United States v. Frazier*, 49 C.M.R. 713 (A.C.M.R.1975), and *United States v. Kennard*, 49 C.M.R. 139 (A.F.C.M.R.1974). As Gunnery Sergeant Allen himself admitted, for all he knew "the grocery bag contained groceries or other personal items" that appellant was taking off base. Such a neutral circumstance is not indicative of probable cause. *United States v. Thomas*, 16 U.S.C. M.A. 306, 36 C.M.R. 462 (1966). The detailed underlying circumstances needed to sustain a probable cause determination to apprehend based upon events in the barracks are not present in the instant case.

The Government contends (without conceding) that irrespective of a lack of probable cause to apprehend in this case, the appellant lacks standing to complain about the apprehension and search of Private Carr and the seizure of the evidence from him. The appellant, on the other hand, contends that he does, *citing Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), wherein Chief Justice Burger articulated:

In deciding this case, therefore, it is sufficient to hold that there is no standing to contest a search and seizure where, as here, the defendants:

(a) were not on the premises at the time of the contested search and seizure; [and]

(b) alleged no proprietary or possessory interest in the premises; and

(c) were not charged with an offense that includes, as an essential element of the offense charge, possession of that seized evidence at the time of the con-

tested search and seizure. [*Brown* at 229, 93 S.Ct. at 1569].

This statement of the law is based on portions of the earlier cases of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) and *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). The test as enunciated in *Brown* has been adopted by the circuit courts. *See United States v. Parker*, 530 F.2d 208 (8th Cir. 1976); *United States v. Epperson*, 528 F.2d 48 (9th Cir. 1975). An analysis of the cases decided under this test indicates that the phrasing of the standard in the conjunctive was intentional and that unless all three sub-tests are met, the accused has standing to challenge the search.

The Government suggests that the *Manual for Courts-Martial, United States, 1969*, (Revised edition), paragraph 152, restricts the instances in which an accused has standing to complain of the unlawfulness of a search and seizure, and that the "automatic" standing to complain rule announced in *United States v. Jones, supra*, has been limited by the later cases of *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1967), and *Brown v. United States, supra*, in those instances where the accused was afforded a full hearing on standing to complain and yet failed to allege any legitimate interest of any kind in the premises searched or the merchandise seized. *Simmons, supra*, provided for an exclusionary rule as to the testimony given on a motion to suppress the evidence. It gives the accused protection against coerced self-incrimination.[8]

---

8. In *Jones* the Supreme Court indicated that one charged with possession of the seized evidence is automatically invested with standing to complain of the manner in which it was obtained. In *Jones* the Court articulated a basis for standing to complain on the ground that it would be unfair to deny standing to one who is thereby forced to admit ownership in a possession case in order to gain the right to complain. In *Brown*, however, in *dicta* the Court implied that a failure to raise the issue on the trial level (particularly on a motion to suppress) may under the later *Simmons* case give rise to a waiver of the standing. In *Brown* the Court gratuitously said:

But it is not necessary for us now to determine whether our decision in *Simmons*, supra, makes *Jones'* "automatic" standing unnecessary. We reserve that question for a case where possession at the time of the contested search and seizure is "an essential element of the offense . . . charged." *Simmons*, 390 U.S., at 390, 88 S.Ct. [967], at 974 [19 L.Ed.2d 1247]. Here, unlike *Jones*, the Government's case against petitioners does not depend on petitioners' possession of the seized evidence at the time of the contested search and seizure.

\* \* \* \* \* \*

Again, we do not decide that this vice of prosecutorial self-contradiction warrants the

■ We do not find that the *Simmons* protection rule has rendered the *Jones* automatic standing to complain rule obsolete. At best it has made it questionable, and we do not find that the Supreme Court's *dicta* in *Brown, supra,* concerning the automatic standing rule in *Jones* categorically overrules the *Jones* rule. Until such time as the High Court clarifies this point as part of the law of a case yet to be decided, we continue to give the full benefit of the doubt to the appellant. Thus, we apply the conjunctive standard articulated in the *Brown* case in spite of appellant's failure to raise the issue at trial. In addition, we do not find such standard in opposition to paragraph 152, *Manual,* or vice versa [9] and we reject the Government's argument that appellant bases his standing to complain in the case at bar on some hybrid theory not recognizable in the standards set down in the *Manual* or current case law.

■ While we recognize that the appellant did not allege at trial any legitimate interest in the evidence seized, we do not hold the tactical error of his inexperienced counsel against the appellant under the precise circumstances of this case. We find in this particular instance that the charging of the appellant with possession of the marijuana in question gives rise to a standing to complain as to its seizure as a result of an unlawful search arising out of an illegal apprehension.[10]

■ In addition, the testimony adduced at trial *as well as* the substantive allegation of possession of the 1,028 grams of marijuana is sufficient to give appellant standing to challenge the search and seizure of the grocery bag. *Brown v. United States, supra. United States v. Starr,* 23 U.S.C.M.A. n. 5, 50 C.M.R. 849, n. 5, 1 M.J. 186, n. 5 (1975). All prosecution witnesses testified that the grocery bag belonged to

---

continued survival of *Jones'* "automatic" standing now that our decision in *Simmons* has removed the danger of coerced self-incrimination. We simply see no reason to afford such "automatic" standing where, as here, there was no risk to a defendant either of self-incrimination or prosecutorial self-contradiction. Petitioners were afforded a full hearing on standing and failed to allege any legitimate interest of any kind in the premises searched or the merchandise seized. [*Brown* at 228, 229, 93 S.Ct. at 1569].

9. The *Manual,* paragraph 152, recognizes at least three instances in which an accused has standing to complain of the unlawfulness of a search and seizure. First, he has the right to complain of a search of his own person or property. Second, he has standing to object to a search of another's premises if the accused is legitimately present on the property. Third, he has standing to object to the seizure of his property "upon an unlawful search of anyone's property, unless the presence of the accused was due to trespass." As to these first two grounds, an accused would have standing by virtue of his rights in or presence on the property subjected to a search. As to the third ground, however, an accused would have standing on the basis of his interest in the property seized, regardless of whether he was present at the time of the search and regardless of his lack of ownership over the premises searched.

10. A case similar to the appellant's is *United States v. Young,* 535 F.2d 484 (9th Cir. 1976),

where co-conspirators of the appellant were traveling separately in a pickup truck and were stopped by law enforcement officials. A search of the truck yielded marijuana. The appellants, meanwhile, had been detained separately in their car, about a quarter of a mile behind the pickup. Their vehicle was not searched, but they were arrested and ultimately charged when the search of the pickup disclosed contraband. The charges consisted of conspiracy to unlawfully import and possess with intent to distribute a controlled substance; importation of a controlled substance; and possession with intent to distribute the controlled substance. The Ninth Circuit Court of Appeals dealt with the standing issue in a summary though significant fashion:

At the outset we find that [appellants] Young and Enright each have standing to challenge the search as to Counts I and III. An element of each of those crimes charged is that appellants actually or constructively possessed the marijuana. Young does not have standing with respect to the importation count since possession was not an element of that offense. [*Id.*].

Thus, although the appellants in that case were not present when the search was conducted and did not allege or admit to having a proprietary or possessory interest in the marijuana, the nature of the charges was sufficient to give them standing. *See also United States v. Boston,* 510 F.2d 35, 37 (9th Cir. 1974).

appellant. In fact, Private Carr testified that appellant asked that he, Carr, hold the bag for "just a minute" and that appellant fled from the tennis courts, not from Carr but from the military police. Hence, in light of *Brown, supra,* and the charge alleged by the Government, and the trial testimony, we determine that appellant has the requisite standing. We further summarily reject the alternative Government argument positing an *abandonment* of the bag to Private Carr which argument is contradicted by Carr's own testimony. We find no such abandonment of the appellant's interest in the property held by his bailee, Private Carr.

Thus, we are able to discern from the record that the apprehensions of the appellant and Private Carr were not supported by probable cause and were unlawful. Since Private Carr was merely acting as bailee for the appellant and the appellant had not surrendered any interest in the property held by his bailee—whose arrest and subsequent search were unlawful—the appellant properly may object to the seizure of the property in question (of which appellant was charged with possession). Having established that the apprehension was unlawful and that appellant has standing to challenge the search of the grocery bag, it logically follows that the results of the bag search were tainted and should have been suppressed at trial.[11]

 Further, in view of Private Carr's participation in the events in question (the record indicates his very identity was learned of only through an exploitation of the events leading to the unlawful apprehension of the appellant), his testimony should not have been admitted into evidence since it too was tainted. *United States v. Castro,* 23 U.S.C.M.A. 166, 48

C.M.R. 782 (1974); *United States v. Armstrong,* 22 U.S.C.M.A. 438, 47 C.M.R. 479 (1973).

 The Government contends that there is insufficient linkage between Private Carr's apprehension and search (and seizure of the brown bag full of marijuana) and the apprehension of the appellant. Without belaboring the obvious illegality of the apprehension and search of Private Carr, it is patent that the *sine qua non* for Carr's apprehension was the unreasonable action of Sergeants Cornett and Allen in following the brown bag *ab initio* and the apprehending of the appellant as the prime suspect in an alleged potential drug transaction. But for the focus of Sergeants Cornett and Allen on the appellant, and their overzealousness, without probable cause in effecting his arrest, Private Carr would certainly not have been involved to a degree wherein he was apprehended and searched. A natural sequitur of the unlawful conduct perpetrated against the appellant was the identification of Carr and the utilization of him as a witness against the appellant, and the use of Carr as a vehicle for obtaining an admission against interest by the appellant through his four word statement to the criminal investigators implying drug involvement.[12]

We find that all of the evidence obtained as a result of and linked with the unlawful apprehension and search in this case was tainted and should have been excluded. Since there is no other competent evidence that appears available for use to press the 16 March offenses any further, the appropriate remedy in this instance is dismissal of the Additional Charge.

Accordingly, the findings of guilty as to the Additional Charge and the two specifi-

11. *See Manual,* supra, paragraph 152; *Wong Sun v. United States,* supra; *United States v. Nazarian,* 23 U.S.C.M.A. 358, 49 C.M.R. 817 (1975).

12. Even if appellant's statement to the criminal investigators had not been tainted by the illegal apprehension and search in this case, his four word answer "Yes, that one too" could hardly stand as a confession to each and every element of the offenses arising out of the 16 March episode, nor is it corroborated in any way by the evidence of record. *Manual,* paragraph 140*a*(5); *see also United States v. Seigle,* 22 U.S.C.M.A. 403, 47 C.M.R. 340 (1973). *Cf. United States v. Hiss,* 20 U.S.C.M.A. 3, 42 C.M.R. 195 (1970).

cations thereunder are set aside and the Additional Charge is dismissed.

Upon reassessment of the sentence, in view of the seriousness of the remaining offenses of which the appellant stands convicted, we find the punitive discharge and reduction awarded in this case to be just and appropriate. Thus, we will address relief in our reassessment to the confinement and forfeiture portions of the sentence. Accordingly, only so much of the sentence as provides for a bad conduct discharge, confinement at hard labor for one month, forfeiture of $240.00 pay per month for one month, and reduction to pay grade E–1 is affirmed.

Judge MALLERY and Judge GREGORY concur.